Margaret Nofree, Appellant, v. John Leonard, Appellee.

Gen. No. 43,237.

Heard in the second division of this court for the first district at the October term, 1944. Opinion filed November 6, 1945. Released for publication November 20, 1945.

PEDEN, RYAN & ANDREAS, of Chicago, for appellant; GERALD RYAN, of Chicago, of counsel.

ARNOLD F. BERGER, of Chicago, for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is a forcible detainer action brought by plaintiff, Margaret Nofree, against the defendant, John Leonard, to recover possession of the first floor apartment in the three-flat building at 7751 Saginaw avenue, Chicago, Illinois, which was owned by plaintiff, her father and brother in joint tenancy. On defendant's motion at the close of plaintiff's evidence the trial court made a finding against plaintiff and entered judgment in favor of defendant on said finding. Plaintiff appeals.

It is conceded that defendant's lease had expired and been terminated in accordance with its terms and that plaintiff proceeded in compliance with the provisions of the Illinois statutes pertaining to the institu-

tion and maintenance of this action. But in addition to such compliance it was necessary for plaintiff to show that she had a right to recover possession of the premises under the Rent Regulations issued pursuant to the Emergency Price Control Act of 1942 (56 Stat. chap. 26, p. 29, 50 USCA, Appendix, sec. 921).

The applicable provisions of the Federal Rent Regulations (Sec. 1388.1181, Rent Regulation for Housing) are as follows:

"Section 6, Removal of tenant: (a). Restrictions on removal of tenant.

"So long as the tenant continues to pay rent . . . no tenant shall be removed from any housing accommodation by action to evict . . . notwithstanding that . . . his lease . . . has expired or otherwise terminated . . . unless:

"(6) Occupancy by landlord. The landlord . . . seeks *in good faith* to recover possession of such accommodations for immediate use and occupancy as a dwelling for himself." (Italics ours.)

It will be noted that the foregoing section 6 (a) was promulgated for the sole benefit of tenants. It prohibits the eviction of any tenant so long as he continues to pay his rent, even though "his lease has expired or otherwise terminated." But there are exceptions to that regulation, one of which (paragraph (a) (6)) provides, *inter alia,* that a tenant may be removed by an action to evict when the landlord owned the housing accommodations prior to October 20, 1942 and "seeks in good faith to recover possession of such accommodations for immediate use and occupancy as a dwelling for himself." The instant action was brought under this exception and it is readily apparent that same was incorporated in the Rent Regulations primarily for the benefit of the owner who in good faith needed and desired the housing accommodations for his own occupancy as a dwelling. The only issue of fact before the trial court about which there could possibly be any

controversy was whether plaintiff in good faith desired to occupy the premises as a dwelling for herself and family or whether she did not act in good faith and brought this action for the purpose of securing defendant's eviction merely upon the pretext that she desired to occupy the premises as a dwelling for herself and family.

The facts, briefly stated, as shown by plaintiff's evidence are that on January 16, 1941 she, her brother and her father became the owners in joint tenancy of the three-flat building at 7751 Saginaw avenue; that plaintiff, her husband, father and brother occupied the first apartment of the building from 1930 to May 1, 1941; that by a written lease executed by Nels Magnuson, plaintiff's father, the said first apartment was rented to defendant for the two-year period—May 1, 1941 to April 30, 1943; that there was a provision in the lease for its annual renewal if neither of the parties terminated same by 60-day written notice; that when the lease was made to defendant on May 1, 1941, plaintiff and the other members of her family moved from the first floor apartment to the third floor apartment in the same building; that about two years before the trial plaintiff's brother entered the United States Navy; that from the time plaintiff and her family moved into the third floor apartment until her brother joined the Navy, he and his father did the necessary janitor work in and around the building—tending the heating plant, sweeping the stairs, etc.; that her brother did all the heavy work but that after he left her father did all the janitor work, she and her husband being employed; that plaintiff's father was seventy-seven and one-half years old and shortly after his son entered the service he became afflicted with rheumatism and it "was hard for him to walk up three flights of stairs"; that on January 13, 1944 defendant was served with a written notice by plaintiff's father terminating his lease of the first floor apartment as of April 30, 1944 and advising

him of the landlord's desire to occupy the apartment with his family; that defendant disregarded such notice as well as a 30-day notice that was later served upon him and remained in possession of the first floor apartment; that on May 1, 1944 plaintiff rented the third floor apartment to a tenant who had not theretofore lived in the building and she and her family moved out of same —first to a hotel and then to a two-room furnished apartment; that because of the cramped quarters in this furnished apartment she and her husband were required to sleep in the living room and her father on a couch in the dinette; and that her father still ''does janitor work in the building'' and sprinkles a small lawn in front of the premises.

There can be no question but that plaintiff's evidence showed that she and her father and brother owned the building in question in joint tenancy since prior to October 20, 1942. The only other element which it was essential for plaintiff to prove in order to recover possession of said apartment was her *good faith* in desiring to occupy the premises as a dwelling for herself. We think that the term good faith as used in paragraph (a) (6) of the Rent Regulations can only be reasonably construed as meaning an honest desire by the owner of housing accommodations to recover possession thereof for immediate use and occupancy as a dwelling for himself and that said owner legitimately required said housing accommodations to live in. As thus construed plaintiff's evidence certainly made out at least a prima facie case that she acted in good faith.

Defendant insists that the good faith the owner is required to exercise under paragraph (a) (6) of the Rent Regulations is toward the tenant, whose removal is sought, and that plaintiff's own evidence showed affirmatively that she did not act in good faith in that she failed to afford the defendant an opportunity to exchange his first floor apartment for her third floor apartment before she moved out of same. It was be-

cause the trial judge agreed with defendant's position in this regard that he held as a matter of law that plaintiff's evidence did not make out a prima facie case. In our opinion the trial court erred in so holding, because, even though it be assumed that plaintiff was required to prove that she acted in good faith toward defendant before she would be entitled to recover possession of the first floor apartment, she met that requirement because she testified that while she did not personally submit the third floor apartment to defendant, her agent did.

Moreover, the provisions of the Rent Regulations under consideration do not make the attitude or conduct of the owner toward the tenant whom he seeks to dispossess the criterion of the good faith required. What those provisions do require is that the owner prove that he "seeks in good faith to recover possession of such accommodations for immediate use and occupancy as a dwelling for himself" and, as already stated, the only issue of fact that could be raised in this case as to plaintiff's good faith was whether she honestly desired and legitimately needed the premises as a dwelling for herself or whether she did not act in good faith but merely asserted her desire and need to occupy the premises as a dwelling for herself as a pretext for gaining possession of such premises.

While the fact that plaintiff did not offer to exchange the third floor apartment with defendant for his first floor apartment when she moved out of her building, if she did not make such offer, was competent testimony and admissible in evidence, it was not conclusive or controlling on the question of the good faith required of plaintiff under paragraph (a) (6) of the Rent Regulations. While such fact would probably indicate unfairness and ill-will toward defendant, it could only be considered in connection with all the other facts and circumstances in evidence in so far as it

might tend to show whether plaintiff did or did not act in good faith in desiring to occupy the premises as a dwelling for herself and family.

No case has been cited and we have been unable to find one, wherein a court of review of this State has considered or construed paragraph (a) (6) of the Federal Rent Regulations and particularly the term ''good faith'' as used therein. However, the Supreme Court of Minnesota in the recent case of *Sviggum v. Phillips,* 217 Minn. 586, 15 N. W. (2d) 109, did construe the foregoing section under a factual situation strikingly similar to that presented here. In that case the plaintiff was an elderly unmarried woman who owned a four-flat building—two apartments on the first floor and two on the second. She occupied apartment No. 2 on the first floor from 1930 to 1933, when she moved to a hotel. The apartments were ordinarily rented unfurnished but upon moving to said hotel she removed part of her furniture to apartment No. 3 on the second floor and rented that apartment furnished. In February 1942 apartment No. 2 on the first floor was vacated and plaintiff planned to move her furniture from apartment No. 3 back to apartment No. 2 and occupy the latter apartment herself. This plan did not materialize and in April 1942 she rented apartment No. 2 unfurnished to defendant. The relationship between plaintiff and defendant became unfriendly and a series of disputes were aired before the OPA. In June 1943 the tenant in apartment No. 3 vacated and plaintiff's furniture then became available for her use. She notified defendant on June 28, 1943 that she desired apartment No. 2 for her own use. Defendant refused to vacate apartment No. 2 and plaintiff brought an action to recover the possession of same. After plaintiff had offered her proof and rested the defendant moved for a directed verdict, which motion was granted. There the court in reversing the judgment of the trial court

entered on the directed verdict and remanding the cause for a new trial said at pages 588-591 of the first mentioned report:

"We do not overlook the fact that there were a number of circumstances indicating that plaintiff desired to have defendant removed from the premises because of ill feeling between the parties regarding the rent ceiling and the nonpayment of rent. Numerous consultations were had with the OPA as a result of these disagreements. This was not, however, determinative or conclusive of the issue whether plaintiff in good faith desired to occupy the premises as her dwelling. It was one of the factors to be taken into consideration by the trier of fact. In *Colwell v. Stonebraker* (D. C. Mun. App.), 31 A. (2d) 866, 867, tried to the court, where findings for the landlord were sustained, the court said:

" 'That the rent of the selected premises is low when contrasted with that of similar housing units, the availability of other quarters, and objection to or even ill-will toward a particular tenant, are matters properly admitted in evidence as bearing upon the good faith of one seeking possession under Section 5 of the Rent Control Act. But no one, or all in combination, necessarily constitute bad faith. They are items of evidence, to be considered by the court with the other evidence in the case.'

"It is also true that some inconsistency may be pointed to in the reasons assigned by plaintiff for desiring to move into the apartment. For example, she stated that she did not care to move into one of the apartments on the second floor because it necessitated climbing the stairs, which was difficult for her on account of advanced age and a shortness of breath upon exertion; while, on the other hand, she testified that she intended to take care of the lawn and the furnace. Nonetheless, it was for the trier of fact to weigh the

evidence and determine its probative value. In any event, the choice of apartments was for her to make. If an owner has several properties available, the decision as to which one he will occupy is for him to make. *Downs v. Karsh* (D. C. Mun. App.), 33 A. (2d) 620. In plaintiff's favor is the testimony of Mrs. Zimmerly, tenant in apartment No. 3, that in the early part of 1942 plaintiff endeavored to obtain the furniture from her in order to furnish apartment No. 2, but that she (Mrs. Zimmerly) did not care to rent apartment No. 3 unfurnished. The result was that plaintiff did not move the furniture. Instead she raised the Zimmerlys' rent $2.50 per month, and they remained in apartment No. 3, continuing to use plaintiff's furniture. Thus it appears that plaintiff desired to move into this apartment more than a year before she served notice upon defendant to surrender possession of it and before she had rented it to him or had any disagreement with him. It further appears that shortly after plaintiff received word that the Zimmerlys were moving out and her furniture would be available she served a notice upon defendant to vacate. Her desire to move back into apartment No. 2 is further emphasized by the fact that before she rented it to defendant and while she was attempting to obtain all her furniture in order to move into it, she had a cot, equipped for use, moved up from the basement and placed in the apartment. Plaintiff testified that she wanted to make her home there; that her furniture was deteriorating and she wished to make use of it; that her lawn had been practically destroyed and she wanted to take care of it. It may well be that she was not physically capable of doing what she contemplated. However, that was for the trier of fact to consider on the issue of good faith.

" 'On the issue of good faith, it is proper for the court to consider all the facts and circumstances which the owner appears to have regarded as important in

forming his desire to occupy the housing accommodations himself.' (*Bumgarner v. Orton* (Cal. Super.), 146 P. (2d) 67, 69.

". . . As the court said in *Hoyt v. D. & I. R. R. Co.*, 103 Minn. 396, 400, 115 N. W. 263, 264:

" 'Good faith, like fraud, is hardly capable of exact definition. It is a question of fact, which depends upon many circumstances and conditions. It is generally a question for a jury to determine.'

"On the issue of good faith under OPA rent regulations, all the circumstances must be taken into consideration in determining whether a landlord is 'merely attempting to juggle his property for profit, or legitimately requires it to live in.' *Gould v. Butler* (D. C. Mun. App.), 31 A. (2d) 867, 879; *Shaffer v. Bowes* (D. C. Mun. App.), 31 A. (2d) 690; and *Bumgarner v. Orton* (Cal. Super.), 146 P. (2d) 67; *Downs v. Karsh* (D. C. Mun. App.), 33 A. (2d) 620; and *Colwell v. Stonebraker* (D. C. Mun. App.), 31 A. (2d) 866, *supra*."

■ Defendant's motion for a finding in his behalf at the close of plaintiff's evidence presented to the trial court purely a question of law as to whether or not her evidence made out a prima facie case. In sustaining defendant's motion on the ground that plaintiff's evidence did not make out a prima facie case and entering judgment in favor of defendant the trial court erred, since plaintiff's evidence fairly tended to establish her cause of action.

■■ Although the only point raised by defendant in the trial court was that plaintiff had not proved *good faith,* he now urges two additional points to sustain the judgment—that Margaret Nofree was not the proper party plaintiff and that two prior judgments were *res judicata* of this action. Neither of these purported defenses having been raised or considered by the trial court, they cannot be raised here for the first time.

For the reasons. stated herein the judgment of the municipal court of Chicago is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded for a new trial.*

FRIEND, P. J., and SCANLAN, J., concur.