CAROW et al. v. BISHOP.

SAME v. HUNTER.

SAME v. BOND.

Nos. 436, 437, and 438.

Municipal Court of Appeals for the District of Columbia.

Dec. 12, 1946.

[10] Code 1940, 45—1610.

[11] Moore v. Coates, D.C.Mun.App., 40 A.2d 68.

C. Murray Bernhardt, of Washington, D. C. (Lucien H. Mercier and N. Meyer Baker, both of Washington, D. C., on the brief), for appellants.

Thomas S. Jackson, of Washington, D. C. (Edison W. Mollohan, Jr., of Washington, D. C., on the brief), for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

Appellants, as landlords, brought suits for possession of portions of a building occupied separately by the three appellees. The cases were consolidated for trial and at the close of plaintiffs' evidence all defendants moved for findings in their favor and dismissal of the complaints. The motion was granted and appeals, consolidated here, were taken.

The property in question is a three-story building in a commercial zone. The first floor is occupied by a store and office. Appellee Hunter occupies the front of the second floor, using it for dwelling purposes and the conduct of a millinery

business. Appellee Bishop occupies the rear of the second floor and uses it for dwelling purposes and the conduct of a dressmaking business. Appellee Bond occupies the third floor apartment as a dwelling. Appellants contend that the two tenants of the second floor cannot invoke the protection of the District of Columbia Emergency Rent Act because that Act is limited in its scope to property rented for ·living or dwelling purposes, whereas these two tenants conduct commercial enterprises on the premises occupied by them. These tenants have been in occupancy since 1934 and 1935 and have continuously used the premises for dwelling purposes with the knowledge of the landlord. When the Rent Act became effective on January 1, 1942, we think it is clear that the two tenants of the second floor were occupying their respective quarters for dwelling purposes and came within the purview of the Rent Act, although one was conducting a millinery business in her home and the other a dressmaking establishment in hers. We do not mean to say that property rented expressly and only for commercial purposes may be converted by a tenant, against the will of the landlord, into housing accommodations within the meaning of the Rent Act. This is not such a case. The lease to the tenant Hunter prohibited her from carrying on "any business except that of a millinery," but it did not in terms prohibit her from using the premises as a dwelling and she had so used it with the landlords' acquiescence for a number of years prior to the Rent Act. With respect to the tenant Bishop, her lease expressly limited the use of the premises as a dwelling only, and we think its use as a dwelling and for dressmaking without objection from the landlords over this long period neither took the premises out of the scope of the Rent Act nor constituted a violation of her tenancy. The tenancy of Bond is admitted to be within the Rent Act. Therefore, all three appellees were entitled to invoke the protection of the Act.

Accordingly the question before us is the correctness of the action of the trial court in finding for defendants at the close of plaintiffs' evidence. In each complaint the plaintiffs alleged they sought in good faith to recover possession for the immediate purpose of substantially altering and remodeling the property and replacing it with new construction, the plans for which had been filed with and approved by the Commissioners of the District of Columbia. See District of Columbia Emergency Rent Act, section 5 (b) (4). Code 1940, 45—1605(b) (4). At trial plaintiffs offered evidence that after the Rent Administrator had denied plaintiffs' application for increased rentals for the premises in question, plaintiffs decided to convert the second and third floors of the building into commercial or office space, had plans drawn for such and approved by the Commissioners of the District of Columbia, and obtained an approximate price of $850 for the work, but had not obtained approval of the work by the Civilian Production Administration and did not believe its regulations prohibited the proposed work. The approved plans were offered in evidence and there was testimony as to some of the details of the proposed remodeling.

Defendants' motion for finding in their favor at the close of plaintiffs' case was based on two grounds, namely, (1) that the court should find plaintiffs did not intend in good faith to make substantial alterations, and (2) that plaintiffs had presented no evidence that the alterations could be made, in view of the regulations of the Civilian Production Administration.

With respect to plaintiffs' failure to establish approval of the proposed work by the Civilian Production Administration, we refer to our decision in Klein v. Hilton, D.C.Mun.App., 40 A.2d 77, 78, where in a situation similar to the present one, we said:

"Plaintiff established that she had secured the approval of the District Commissioners of her plans for remodeling. But appellant says this was not enough and that she should have been required as a matter of law to prove that she could obtain from the War Production Board the necessary priority orders for the work.

"The Rent Act makes no such requirement. It says that for a landlord to become entitled to possession he must establish that the plans had been 'filed with and

approved by the Commissioners of the District of Columbia.' The statute, plain in language, says nothing about priorities and the courts have no right to impose such an additional requirement upon an owner suing in these circumstances.

"There may be cases where the evidence is unequivocal and where it is apparent that the landlord cannot possibly secure priorities and would find it impossible to do any remodeling. On such a showing of complete inability to remodel, an owner's claim for possession might be defeated because of a conclusion of bad faith or otherwise; but that, as we shall show in a moment, is not this case."

In the present case there was no showing of complete inability of plaintiff to remodel because of the Civilian Production Administration Regulations. Indeed, as we understand appellees' argument, their position is that the regulations did not constitute a bar to the action but were to be considered by the court in determining appellants' good faith in seeking possession, in accordance with our ruling in the Klein case. We agree with appellees that the regulations could properly be considered by the court on the question of good faith.

 This brings us to consideration of what appears to have been the principal ground of appellees' motion, namely, that on appellants' evidence the trial court should find that possession of the property was not sought by appellants in good faith. Good faith, ordinarily, is a question of fact and not of law.[1] It cannot be said as a matter of law that appellants' evidence disclosed lack of good faith. Could the trial court on such a motion find lack of good faith as a matter of fact? In Merriam v. Sugrue, D.C.Mun.App., 41 A.2d 166, we held (1) that a motion for a finding for defendant at close of plaintiff's evidence in a non-jury case is governed by the same rules controlling a motion for directed verdict in a jury case; (2) that on such a motion plaintiff's evidence must be taken as true, with all reasonable inferences drawn in plaintiff's favor; (3) that on such motion the evidence may be tested only for legal sufficiency and not for weight or credibility; and (4) that findings of fact may be made only after the evidence is completed. We have re-examined our holding in that case and are convinced that it is sound and supported by the weight of authority.[2]

 When the motion in the present case was made the evidence was not complete, for it is plain that appellees were not waiving their right to introduce evidence if their motion were denied. Therefore, the trial court had no power at that stage of the proceeding to find lack of good faith as a matter of fact. Since, as we have already said, the evidence did not justify a holding of lack of good faith as a matter of law, the court's finding for appellees cannot be sustained.

Reversed with instructions to grant a new trial.

[1] Staves v. Johnson, D.C.Mun.App., 44 A.2d 870.

[2] Smith v. Russell, 8 Cir., 76 F.2d 91, certiorari denied, 296 U.S. 614, 56 S.Ct. 135, 80 L.Ed. 436; Freese v. Hibernia Sav. & Loan Society, 139 Cal. 392, 73 P. 172; E. E. Alley Co. v. Ball, 102 Fla. 1034, 136 So. 704; Hoigard v. Yellow Cab Co., 320 Ill. 317, 150 N.E. 911; Brown v. Schmitz, — Iowa —, 22 N.W. 2d 340; Nofree v. Leonard, 327 Ill.App. 143, 63 N.E.2d 653; Windus v. Bodecker, 132 Kan. 857, 297 P. 702; Jones v. Toledo, St. L. & W. R. Co., St. Louis, Mo., App., 202 S.W. 433; Weston Electrical Instrument Co. v. Benecke, 82 N.J.L. 445, 82 A. 878; Schlesinger v. Jud, 61 App.Div. 453, 70 N.Y.S. 616; Lorino v. Crawford Packing Co., Tex.Civ.App., 169 S.W.2d 235.