## TURNER v. NATIONAL HOSPITALIZATION, Inc.

### No. 479.

Municipal Court of Appeals for the
District of Columbia.

April 3, 1947.

Leroy A. Brill, of Washington, D. C. (Bernard H. Conn, of Washington, D. C., on the brief), for appellant.

Cornelius H. Doherty, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Plaintiff sued defendant for hospital charges and additional miscellaneous benefits under a hospitalization policy issued originally by National Hospital Service Society, Inc., and subsequently assumed by defendant corporation. The trial court, sitting without a jury, gave judgment for the defendant, and plaintiff prosecutes this appeal.

The fact of the hospitalization of plaintiff for 14 days during October and November 1945 is not disputed, and the amount to which plaintiff would have been entitled had judgment been rendered in her favor was stipulated at the trial.

The only issue before the trial court and urged on this appeal was whether plaintiff's recovery was barred by her admitted failure to answer correctly certain questions in her application for insurance regarding a previous operation and medical treatment. On such application, which plaintiff filed in April 1941, she was asked the question whether she had had "medical or surgical treatment or advice in past ten years." She answered yes and stated that she had had a kidney stone operation in January 1938 and influenza in February 1941. She gave the names of the doctors attending her on those occasions and also gave the name of her family physician. In answer to a further question as to whether she had had any "illness, injury, or disability not mentioned previously," she answered "Yes, children's diseases."

During her hospitalization in 1945, upon which this suit is based, plaintiff was operated on by Dr. Paul S. Putski. His primary diagnosis was fibroid uterus, and his secondary or additional diagnoses were: (1) Erosion of cervix; (2) rectocele; (3) left cystic ovary; and (4) appendicitis. According to his written report, Dr. Putski performed on plaintiff a hysterectomy (removal of the uterus), a perineorrhaphy, and an appendectomy. His testimony was that in addition to the hysterectomy and appendectomy he also performed a left salpingo-oophorectomy and cauterization of the cervix.

In his report, which was furnished to defendant, Dr. Putski, in answer to a question, stated that in 1939 he had performed on the plaintiff a cauterization of the cervix[1] to cure an ulcerated condition and that in May 1940 he had removed a portion of an ingrown toe nail. Defendant rejected plaintiff's claim for the hospitalization benefits on the basis that in her application she had not reported the 1939 cauterization of the cervix.

At the trial defendant offered no testimony but relied upon the testimony of plaintiff herself and of Dr. Putski. Plaintiff stated that she had not in her application listed Dr. Putski as a physician who had treated her because she "simply did not think of it," that she did not intend to purposely leave out his name, and that she had been referred to Dr. Putski by Dr. Stewart O. Foster, whom she had listed on the application as her family physician. Plaintiff also testified that the operation in 1939 had been a minor one, that she had had no trouble at all until 1945, that when she filled out the application in 1941 she was feeling fine and was in good health until 1945.

Dr. Putski, whose qualifications as an expert in gynecology and related surgery were admitted, testified that when he had treated plaintiff in 1939 she had made an uneventful recovery, and he had discharged her as cured; that his examination in 1939 showed plaintiff had an "ulcerative endocervicitis" about the size of a ten-cent piece;

that he cauterized the cervix at Emergency Hospital under general anesthesia, that he examined plaintiff in 1942 and the uterus was normal; that she had been sent to the hospital in 1945 primarily for the removal of the fibroid of the uterus, a tumor; that he also removed the appendix and performed the other operations as a matter of routine; that he always performs the cauterization of the cervix in connection with an operation such as this.

It was stated by Dr. Putski that in his opinion there was no connection between the cauterization of the cervix in 1939 and any of the operations he performed in 1945.

On cross-examination the doctor testified that cauterization of the cervix is a frequent and minor operation; that often he performs it in his office; that in the majority of cases once the cervix is cauterized there should be no further trouble concerning it but that in some cases the trouble recurs; that it was possible but not likely that there might be trouble again after the cauterization of the cervix; that there is nothing serious about a cauterization of the cervix in a normal case nor is it unusual for a female to have such an operation more than once. Based upon such evidence, the trial court gave judgment for defendant.

Plaintiff urges the applicability to this case of Section 35—712(f), D.C.Code 1940, providing as follows: "The falsity of any statement in the application for any policy covered by this section shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the company." By the terms of the statute this provision applies to companies organized under any law of the District of Columbia, or, if a foreign company, authorized to do business in this jurisdiction. Admittedly, such section applied to the company which originally wrote the policy because that company was chartered in the District and was

---

[1] The cervix is the neck or lower end of the uterus. Endocervicitis, according to The American Illustrated Medical Dictionary, 18th edition, is an inflammation of the lining membrane of the neck of the uterus.

originally authorized to do business here.[2] Defendant urged, however, that the policy having been assumed by the present defendant, a Maryland corporation, with the consent of plaintiff, the section no longer applies. No evidence was offered that defendant was not authorized to do business in the District of Columbia or that it actually did not do business here. The policy was written here, plaintiff has continued to live here, and the claim arose here. Moreover, the application signed by plaintiff contained a statement that the right to recover "shall be barred in the event that any one of the above statements material to the risk or hazard assumed by the Society is false or in the event any material information is withheld." We conclude that the statute applies.

Plaintiff admittedly did not report the 1939 cauterization of the cervix by Dr. Putski. The burden of proving that the right to recover was thereby barred was on defendant,[3] but such burden may be carried by evidence adduced from plaintiff's own witnesses.[4] At the conclusion of plaintiff's evidence defendant moved for finding and judgment in its favor. Before the court acted on this motion, counsel for defendant stated he had no evidence to offer; whereupon plaintiff moved for judgment. It results that the test to be applied to the judgment is whether it is supported by substantial evidence.[5]

The general rule for applying the statute was stated as follows in Prudential Ins. Co. v. Saxe, supra, 77 U.S.App.D.C. at page 153, 134 F.2d at page 25:

"To avoid the policy under the statute the statements must be both false and made with intent to deceive or material to the risk or its acceptance, unless possibly both intent to deceive and materiality are required in addition to falsity, a matter which need not be decided in this case. Whether a statement is false, made with deceitful intent or material in the statutory sense may be questions of law or of fact, depending on the circumstances."

In Kaplan v. Manhattan Life Ins. Co., 71 App.D.C. 250, 109 F.2d 463, 464, a case not involving the present statute, the following statement was quoted from Wharton v. Aetna Life Ins. Co., 8 Cir., 48 F.2d 37, 43, certiorari denied 284 U.S. 621, 52 S.Ct. 9, 76 L.Ed. 529: " 'An applicant for insurance is not required, nor indeed expected, to disclose the fact of consulting a physician for slight or temporary ailments such as an ordinary cold, inability to sleep, constipation, headache, or the like. * * * To void this policy on the ground of false representation, the answer must not only have been untrue, but it must have been with reference to a material matter.' " Both of those cases involved life insurance policies.

It is obvious, we think, that a sickness or operation not material under a life insurance policy might be material under a hospitalization policy. In the one case the issue would be whether life were shortened, whereas in the latter the issue would be whether hospitalization would more likely be required.

Tested by these principles we have concluded that, while we might have found as a fact that the failure to report the 1939 operation was not due to an actual intent to deceive and neither materially affected the acceptance of the risk nor the hazard assumed, yet there was sufficient evidence to justify the trial judge in arriving at the opposite result. Reasonable men might conclude that a person would not forget an operation performed only two years before applying for insurance, particularly when the operation was performed at a hospital under general anesthesia. It is true that plaintiff reported the kidney stone

2 See National Hospital Service Soc., Inc., v. Jordan, 76 U.S.App.D.C. 26, 128 F.2d 460, certiorari denied 317 U.S. 664, 63 S.Ct. 65, 87 L.Ed. 534.

3 Prudential Ins. Co. v. Saxe, 77 U.S. App.D.C. 144, 134 F.2d 16, certiorari denied 319 U.S. 745, 63 S.Ct. 1033, 87 L.Ed. 1701; Metropolitan Life Ins. Co. v. Adams, D.C.Mun.App., 37 A.2d 345.

4 Ward v. S. Kann & Sons Co., D.C. Mun.App., 47 A.2d 785; Ætna Ins. Co. v. Taylor, 5 Cir., 86 F.2d 225; United States v. Beaman, 8 Cir., 242 F. 876.

5 Merriam v. Sugrue, D.C.Mun.App., 41 A.2d 166; see also Carow v. Bishop, D. C.Mun.App., 50 A.2d 598.

operation, performed in 1938, and the attack of influenza in 1941, but the trial court could have concluded she did not want to report too many illnesses for fear the policy would not be written. The doctor testified that in the majority of cases, once the cervix is cauterized, there should be no further trouble concerning it, but he also testified that in some cases the trouble recurs, and that it is not unusual for a female to have such an operation more than once. He testified that he cauterized the cervix in connection with the 1945 operation only as a matter of routine, but the fact remains that he did repeat the operation. Here the doctor said he often performed such operations in his office, yet the fact remains that he performed this one in a hospital. He testified he considered the 1939 operation only a minor one, yet even a minor operation performed at a hospital may be material to the risk under a hospitalization policy.

In view of the doctor's diagnosis and treatment and his testimony, we find it impossible to determine as a matter of law that the failure to disclose the earlier operation was immaterial to the hospitalization risk insured against or that plaintiff did not make the misrepresentation with intent to deceive. The judgment, therefore, must be

Affirmed.