Antonia F. Mikkelsen, Appellee, v. Louisa McDonald, Appellant.

Gen. No. 44,301.

Opinion filed February 17, 1948. Released for publication March 9, 1948.

ROBERT J. LEY, of Chicago, for appellant; PETER D. GIACHINI and ALPHONSE CERZA, both of Chicago, of counsel.

KELLAM FOSTER, of Chicago, for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an action of forcible detainer to secure possession of housing accommodations. The case was tried by the court without a jury. Judgment was entered in favor of plaintiff. Defendant appeals.

The statement of claim was in the usual form, plaintiff alleging therein that she was entitled to the possession of certain premises at 1448 North Latrobe avenue, Chicago, Illinois, and that "the defendant unlawfully withholds possession thereof from plaintiff."

Upon the opening of the trial plaintiff's attorney stated that her position was that "this is a suit to terminate a month to month tenancy, we want to occupy the premises for our own use." Defendant's attorney stated that "we have two defenses; first, no notice of termination of tenancy was ever served on the defendant; and secondly, the proceedings are not in good faith."

Inasmuch as defendant asks for the reversal of the judgment appealed from without remandment on the ground that plaintiff did not make out a prima facie case as to the issues thus presented, it is necessary to determine whether there is any evidence in the record which tends to show that defendant was properly served with a notice terminating her tenancy and that plaintiff acted in good faith in seeking to recover possession of the housing accommodations in question.

Defendant contends that "plaintiff has failed to comply with the provisions of the state law providing for the service of notice of termination of tenancy."

Section 6 of the Landlord and Tenant Act (par. 6, ch. 80, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 72.06]) provides as follows:

"In all cases of tenancy for any term less than one year, where the tenant holds over without special agreement, the landlord may terminate the tenancy by thirty days' notice, in writing, and may maintain an action for forcible entry and detainer or ejectment."

Plaintiff instituted a prior forcible detainer action against defendant involving the same premises in question here. On July 1, 1947, the parties and their attorneys appeared for trial and that case was dismissed. At the conclusion of the trial of that action and while the parties and their attorneys were still before the bar of the court, counsel for plaintiff said to the trial judge in the presence and hearing of the parties, "I will have to serve her [defendant] with a notice of termination of tenancy" and attempted to serve her with such a notice at that time. Upon objection by counsel for defendant, JUDGE HELLER, the trial judge in that case, said, "You can't use the court room for that purpose. If you want to serve a notice you can serve it out in the corridor, but you cannot serve it in the court room."

Plaintiff testified in substance in the instant case that when she left JUDGE HELLER's courtroom on July 1, 1947, after the foregoing occurrence, she waited in the corridor to serve the notice of termination of tenancy on the defendant when the latter came out of the courtroom; that she did not see defendant and her attorney when they first came out of the courtroom; that she then saw them from "behind"; that she ran a short distance after the defendant and placed the notice "right on her purse"; that "when she saw me," she dropped the notice and "ran down the hallway as fast as she could run"; that she said nothing to defendant at that time but picked up the notice and ran

after her and ''gave it to her again,'' putting it ''right in her arm''; and that ''she dropped it on the floor again and ran down the stairs as fast as she could run.''

A notice of termination of defendant's tenancy, including plaintiff's affidavit of service thereof, was received in evidence. The notice was in proper form and the affidavit of service is as follows:

''Antonia F. Mikkelsen, being duly sworn, on oath deposes and says that on the first day of July, A. D. 1947, she served the within notice by delivering a copy thereof to the within named Louisa McDonald. Said Louisa McDonald thereupon refused to accept said copy although affiant offered, tendered and held it out to her, but permitted said copy to fall to the floor. Whereupon, said Louisa McDonald hurried away from affiant. Affiant immediately picked up said copy, followed said Louisa McDonald and overtook her and again offered, tendered and held out said copy to said Louisa McDonald, but said Louisa McDonald refused to accept same and permitted said copy to fall to the floor and again hurried away from affiant down a stairway out of affiant's sight. Affiant thereupon left said copy on the floor.

Antonia F. Mikkelsen

Subscribed and sworn to before me this first day of July, 1947.

Virginia Van Steenberg<br>Notary Public.''

Defendant's attorney testified in her behalf that he did not know that the notice which plaintiff's attorney attempted to serve on defendant in JUDGE HELLER's courtroom was a notice of termination of tenancy but that he assumed that it was and that it was going to be served; that he told defendant to remain in JUDGE HELLER's courtroom ''until everything quieted down''; that he ''returned about half an hour later, and told Miss McDonald 'I think it is about time for you to

leave' ''; that he "walked out of the courtroom with Miss McDonald"; that he "did not see the plaintiff in this case, but I heard somebody talking, I did not know what the talking was about"; that he "saw somebody touch Miss McDonald's shoulder with her hand "; and that he "never saw Mrs. Mikkelsen in front of me at the time and I went down the stairway with Miss McDonald, taking a local elevator at the eighth floor, and I never saw or heard Miss Mikkelsen at that time."

The defendant, Louisa McDonald, testified that after JUDGE HELLER stated that he would not permit the notice of termination of tenancy to be served on her in the courtroom, she "stayed in the court and rested a few moments"; that her attorney returned and she left the courtroom and walked to the elevator with him; that at that time she did not see plaintiff in the corridor or hear her voice; and that she did not see plaintiff "place a piece of paper of any kind" on her purse.

When defendant was cross-examined, she was asked the following question and made the following answer: "Q. And you ran down the corridor and then Mrs. Mikkelsen came after you and she put it again on your purse, didn't she? A. I don't know; I don't remember."

Section 11 of the Landlord and Tenant Act (par. 11, ch. 80, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 72.11]) provides as follows:

"When any such demand is made or notice served by an officer authorized to serve process, his return shall be prima facie evidence of the facts therein stated, and if such demand is made or notice served by any person not an officer, the return may be sworn to by the person serving the same, and shall then be prima facie evidence of the facts therein stated."

It will be noted that under the foregoing section of the statute that the notice of termination of

524

tenancy, including plaintiff's affidavit of the service thereof on defendant, constituted prima facie evidence as to the service of such notice. Plaintiff's testimony served to corroborate the manner in which said notice was served, as set forth in said affidavit of service. We think that the facts and circumstances in evidence warranted the trial court in concluding that defendant deliberately attempted to evade service of the notice.

In *Gallun v. Hibernia Bank & Trust Co.*, 182 Wis. 40, 195 N. W. 703, in passing upon a similar situation, the court said at pp. 704 and 705 of the last mentioned report:

"It is also claimed that there was not a proper service upon the witness Ellsworth. We are of the opinion that the service in this case is good. The witness can make no complaint because the service was not more complete. It was not more complete because he made it impossible for the process server to make it complete. Certainly the process server would not be justified in using personal violence to restrain the movements of the witness until the service could be formally completed. The subpoena was tendered to him, it was within his sight, and he was informed in a general way of its contents. His refusal to accept it, and his refusal to remain until it could be read did not relieve him of the obligation to attend at the time and place specified in the subpoena."

The fact that plaintiff's attorney at the conclusion of the prior trial said to Judge Heller in the presence and hearing of defendant and her attorney, "I will have to serve her with a notice of termination of tenancy" and attempted to serve her with such a notice at that time precluded the possibility that defendant was not aware of the contents of the notice. The further fact that Judge Heller stated that the notice might be served in the corridor was sufficient to cause defendant to suspect that plaintiff and her attorney would be waiting in the corridor to serve her with the

notice. While defendant's attorney denied that he even saw plaintiff in the corridor from the time he left JUDGE HELLER's courtroom with defendant until they reached the elevator on the floor below, he did concede in his testimony that he saw "somebody touch defendant's shoulder with her hand." If he saw somebody's hand on defendant's shoulder in the corridor, he must have seen that "somebody," because he was within a few feet of her. That "somebody" was unquestionably plaintiff. While defendant first insisted in her testimony that she did not see defendant in the corridor at all, she finally stated on cross-examination that she did not know or remember if plaintiff ran down the corridor after her and placed the notice on her purse. It certainly cannot be said that plaintiff's evidence did not make out a prima facie case as to the service of the notice of termination of tenancy on defendant or that the testimony of defendant and her attorney was sufficient to overcome such prima facie case.

Defendant next contends that "plaintiff has failed to comply with the provisions of the Federal law." This contention must be considered in the light of section 209 of the Housing and Rent Act of 1947 (U. S. Code Congressional Service, 80th Congress, 1st Session, p. 207), which provides in part as follows:

"No action or proceeding to recover possession of any controlled housing accommodations with respect to which a maximum rent is in effect under this title shall be maintainable by any landlord against any tenant in any court, notwithstanding the fact that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled unless— . . .

"(2)  the landlord seeks in good faith to recover possession of such housing accommodations for his immediate and personal use and occupancy as housing accommodations."

■ In *Nofree v. Leonard,* 327 Ill. App. 143, we defined the good faith required under a similar provision of a prior act of Congress as "an honest desire by the owner of housing accommodations to recover possession thereof for immediate use and occupancy as a dwelling for himself and that said owner legitimately required said housing accommodations to live in."

Plaintiff testified that she owned the property involved herein since 1934; that she had to move from her previous residence at 2850 Henderson street "about a year ago" because her brother, the owner thereof, found it necessary to build a new foundation under the house; that this work required that the entire basement wall be torn out; that her living quarters thereby became uninhabitable and she was compelled to move; that she stored her furniture; and that since she moved from her brother's building, she had been living in a basement at 4425 Monticello avenue. On plaintiff's cross-examination the following occurred:

"Mr. Cerza [defendant's attorney]: I am going to show she is not going to move in there. May I continue? The Witness: Your Honor, I have been waiting since last September. . . ."

■ It is urged by defendant that, while plaintiff's foregoing testimony may have stated her need for the use and occupancy of the premises, it does not tend to prove "(1) that in good faith she seeks to recover possession for her own use, (2) that it is for her immediate and personal use, and (3) that it is for housing accommodations."

As has been seen, when defendant's attorney asserted to the trial judge that he was going to show that plaintiff "was not going to move in there" she immediately answered this assertion by testifying, "I have been waiting since last September." Her testimony in this regard could not be reasonably construed otherwise than that she had been waiting "since last September" to move into the premises in question and, when all of her testimony is considered, it certainly

tends to show that her only purpose in seeking to recover possession of such premises was to use them immediately as housing accommodations for herself. Plaintiff therefore made out a prima facie case that she complied with the good faith requirement of subsec. 2 of sec. 209 of the Housing and Rent Act of 1947, heretofore set forth.

It is finally contended that "defendant was not given a fair trial." Defendant's attorney, in cross-examining plaintiff as to her good faith in seeking to recover possession of the premises, asked her whether she had secured this property as a result of a mortgage she formerly had on it and whether she had a conversation with defendant "about the middle of August last year [about a year prior to the trial]." After objections to these questions were properly sustained by the trial court, the following colloquy ensued: "Mr. Cerza: There are many other questions I want to ask. The Court: Now listen, . . . we never go into the question of good faith in that situation. If she is the owner and she wants an apartment, she has the right to get it. . . . Now, you say she won't move in there. There are penalties that follow if she does not, and good faith can only be determined after the event, not before. . . . Mr. Cerza: Well, your Honor, there are further questions I would like to ask. The Court: Like what? Mr. Cerza: I want to ask her about a conversation she had with my client. The Court: . . . This is her property. She wants to move into it. The law says she can. . . . Mr. Cerza: Well, may I put [in] whatever defense I have? The Court: No, what could be a defense? Mr. Cerza: I want to put my client on the stand, your Honor. The Court: For what? She won't move in? How would your client know? How could she know? Mr. Cerza: Admissions against interests and conversations."

At the conclusion of the foregoing colloquy the trial judge peremptorily terminated the trial by entering judgment in favor of plaintiff.

It will be noted that defendant was not permitted to testify in her own defense on the question of plaintiff's good faith, although her counsel insisted upon her right to do so, and it will be further noted that the trial judge held that plaintiff was not required to prove her good faith in seeking possession of the premises for her own use.

Under the Emergency Price Control Act of 1942, as amended and the rent regulations promulgated pursuant thereto, the local rent director had exclusive jurisdiction of the question of the good faith of a landlord who sought to recover possession of housing accommodations from his tenant for his own use and he exercised that jurisdiction when the landlord applied for a "certificate relating to eviction." When a certificate of eviction had been issued by the rent director to a landlord who thereafter instituted an action of forcible detainer, the court trying such suit had no jurisdiction to determine the question of the good faith of the landlord.

But the Emergency Price Control Act of 1942, as amended was superseded by the Housing and Rent Act of 1947, which was in force when this case was tried. The applicable provisions of said act have been heretofore set forth and they place the burden upon the landlord of proving that he "seeks in good faith to recover possession of such housing accommodations for his immediate and personal use and occupancy as housing accommodations."

The Housing and Rent Act of 1947, went into effect on July 1, 1947, and this case was tried about a month and a half thereafter. It seems clear from the record that the trial judge was not cognizant of the fact that the rule in effect under the Emergency Price Control Act of 1942, as amended as to the good faith of the landlord had been abrogated by the Housing and Rent Act of 1947.

■ Since the burden of proof was on the plaintiff herein to prove her good faith, defendant was deprived of a substantial right when the trial court refused to permit her to testify in her own defense on the question of plaintiff's good faith in seeking to secure possession of the housing accommodations involved herein for her own use and occupancy. The judgment of the municipal court of Chicago is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded for a new trial.*

FRIEND, P. J., and SCANLAN, J., concur.