HEILMAN v. AMERICAN CAS. CO. OF
READING, PA.

No. 1058.

Municipal Court of Appeals for the
District of Columbia.

Argued May 14, 1951.

Decided June 20, 1951.

Joseph W. Heilman, Washington, D. C.,
for appellant.

Joseph S. McCarthy, Washington, D. C.,
with whom Wilbert McInerney, Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Plaintiff, Louis Heilman, sued to recover certain benefits which he claimed were due him upon an accident and health insurance policy issued by defendant, the American Casualty Company. The case was tried by the court without a jury, which gave judgment for defendant. Plaintiff appeals. The amount of recovery, if any, was stipulated as $838.33, with interest from September 1, 1949, and costs of suit.

The policy provided indemnity for hospital and surgical expense and for loss of time due to accident or illness and also indemnity for loss of life through accident. In June 1949 plaintiff became ill with a kidney ailment and was operated on two weeks later. He was totally disabled from June through August of that year. He claims compensation in the amount of $838.33 for loss of time, hospital and surgical expense and other miscellaneous expenses. Due proof of claim was furnished the company. This action to recover that amount was commenced in June 1950.

As a bar to recovery defendant contends that the kidney condition existed prior to the issuance of the policy and that it had no knowledge of this because of misrepresentations made by the plaintiff. Over objections of counsel, defendant was allowed to introduce evidence that during the five-year period preceding the original application for the policy, plaintiff had suffered from a kidney ailment; that he had undergone X-ray and medical examinations during this period; and that in March 1946, after the policy had been in effect about one year, he had consulted a physician and entered John Hopkins Hospital for a medical examination.

Plaintiff made original application for the policy in February 1945. In his application he stated that he had not been disabled either by accident or illness or received medical or surgical treatment for the previous five years. He agreed that the falsity of any answer in the application would act as a bar to recovery if made with intent to deceive or if it materially affected the acceptance of the risk assumed by defendant. The policy was issued March 1, 1945. It provided coverage only for illness or accident sustained during the term of the policy. It expressly provided that the application was to be a part of the agreement between the parties.

Plaintiff allowed the policy to lapse in November 1946, and it was not reinstated by payment of the premium until December 1, 1947. In his application for reinstatement plaintiff stated that he had received no medical or surgical attention for the previous three years other than what was known by the company.[1] The policy itself provided that reinstatement might be effected by payment of the due premium but that such reinstatement would only cover accidental injury and illness sustained more than ten days after the date of reinstatement. Were this all there was to the case the finding for defendant would have to be sustained.[2]

Plaintiff relies, however, on a provision found in a rider to the policy to support his contention that the defendant could not challenge recovery on the basis of plaintiff's prior medical history. The rider, after providing that the policy should not cover certain types of illness and accident, reads:[3] "The time of commencement of sickness shall not be questionable after said Policy has been maintained in force for a consecutive period of twenty-four (24) months."

1. The defendant company refused to allow reinstatement of the policy in 1947 until plaintiff had signed a waiver for varicosity. Plaintiff had an operation for varicose veins some time after the policy was issued and had collected benefits therefor.

2. Turner v. National Hospitalization, Inc., D.C.Mun.App., 52 A.2d 274.

3. This provision was followed by another which read: "Nothing herein contained shall be held to vary, alter, waive or extend any of the Declarations, Agreements, Exclusions or Conditions of this Policy other than as above stated."

Plaintiff argues that this provision is in effect an incontestability clause and that since 24 months had elapsed from the time of reinstatement in December 1947 until this suit was filed in June 1950, evidence that the ailment existed prior to the periods covered by the policy and that defendant was misled as to this condition was improperly admitted in the trial below. He contends that there was no proper contest of the claim within the two-year period. Proof of loss was filed July 27, 1949, for amounts then claimed to be due and further proof of loss was filed after September 1, 1949. Defendant rejected the claim, but filed no action to cancel the policy and filed no legal contest of the claim until its answer was filed to this action in 1950.

Incontestability clauses generally are found in life insurance policies. In many jurisdictions they are required by statute. Such a clause ordinarily provides that, after the expiration of a certain period of time, the policy shall be incontestable, i. e., that the insurer will no longer be able to set up matters which would formerly have been a defense to a suit on the policy.[4] False answers by the insured in an application for a life insurance policy may not be set up as a defense to a suit by a beneficiary on the policy where the time period set out in the incontestability clause has run.[5] An incontestable clause is in effect a short period of limitations and a policy can only be contested within the meaning of the clause by proceedings in court to which the insurer and the insured, or his representative or beneficiary, are parties. Mere rejection of the insured's claim by the company is not sufficient.[6] We believe the same

rule applies as to "questioning" the time of beginning of an illness.

Often life insurance policies contain provisions for indemnity in cases of disability. It has been held that whether an incontestability clause in a life insurance policy is applicable to the disability provisions depends on whether the disability provisions have been specifically excluded from the clause.[7] Where the incontestability clause has included the disability provisions in the policy, such a clause does not preclude the insurer from proving that the disease or illness on which the insured bases his claim arose prior to the inception of the policy and therefore was not included within its specific coverage.[8] The incontestable clause only prevents a contest by the insurer respecting a liability incurred by it by the terms of the policy. It does not affect that part of the policy setting forth the nature and extent of the coverage.[9]

The provision relating to the time of commencement of sickness which is found in the rider to the policy involved here is not the incontestability clause usually found in insurance policies. It does not preclude generally all defenses on the policy but is applicable only to the issue of the time of commencement of the sickness.

The coverage afforded by the policy is specifically limited in its terms to illness arising after its inception, yet the rider provides that the defendant will not dispute the time of commencement of sickness after the policy has been in effect 24 months. It is apparent that the defendant has qualified its right to question the coverage afforded by the policy by this provision. It is clear

4. 1 Appleman, Insurance Law and Practice, § 311 (1941)

5. Densby v. Acacia Mut. Life Ass'n, 64 App.D.C. 319, 78 F.2d 203, 101 A.L.R. 863.

6. Densby v. Acacia Mut. Life Ass'n, supra, and cases cited therein.

7. Connecticut General Life Ins. Co. v. McClellan, 6 Cir., 94 F.2d 445; Pyramid Life Ins. Co. v. Selkirk, 5 Cir., 80 F.2d 553.

8. John Hancock Mut. Life Ins. Co. v. Markowitz, 62 Cal.App.2d 388, 144 P.2d 899;

Pekras v. Prudential Ins. Co. of America, 291 Ill.App. 597, 10 N.E.2d 704; Mills v. Metropolitan Life Ins. Co., 210 N.C. 439, 187 S.E. 581; Apter v. Home Life Ins. Co. of New York, 266 N.Y. 333, 194 N.E. 846, 98 A.L.R. 1281; Palumbo v. Metropolitan Life Ins. Co., 293 Mass. 35, 199 N.E. 335; John Hancock Mut. Life Ins. Co. v. Hicks, 43 Ohio App. 242, 183 N.E. 93.

9. Apter v. Home Life Ins. Co. of New York, supra; John Hancock Life Ins. Co. v. Hicks, supra.

that when original proof of loss was filed in July 1949 the policy had not been maintained in force for a consecutive period of 24 months, but it is equally clear that such period had expired when the claim was first legally contested in 1950. The provision is in its terms rather ambiguous and where an insurance contract is ambiguous the interpretation most favorable to the insured is to be adopted.[10]

■ It seems to us that the rider, while not the usual incontestability clause, is meaningless unless it means exactly what it says, namely, that after the policy had been in effect for 24 consecutive months defendant could not question the time of commencement of illness. To say that in reality plaintiff's illness began when he first had kidney trouble would be to directly contradict this provision. This, we think, defendant may not do. The situation would be different, we think, had the illness from which plaintiff suffered and for which he had been treated during the period preceding the taking out of the policy been other than kidney trouble—for example, heart trouble or any of the other sicknesses listed in the questions on the application blank. The offering of proof of such other illness and medical attention would have had a bearing on the issue of fraud and at the same time would not have violated the stipulation about not questioning the time of beginning of illness. It is in this sense, we think, that this was not the sort of incontestability clause found in life insurance policies.

Since 24 months had elapsed before the defendant in its answer to this suit questioned the commencement of the sickness, evidence of prior medical history of the plaintiff should have been excluded.

*Reversed with instructions to enter judgment for plaintiff in the amount stipulated.*

HOOD, Associate Judge (dissenting).

In his original application for insurance appellant stated he had received no medical or surgical treatment during the five preceding years, and in his application for reinstatement of the insurance he stated he had received no medical or surgical attention in the past three years except such as was known to the company. Both statements were false and unquestionably the trial court was justified in finding they were made with intent to deceive and that they materially affected the risk assumed by the company. I cannot agree that the provision of the rider, quoted in this court's opinion, prevented the company from proving this defense.

I agree with the statement in the opinion that the rider means "that after the policy had been in effect for 24 consecutive months defendant could not question the time of commencement of illness." As a matter of fact the insurance company also agrees for it says in its brief that the provision "would seem to us to mean that the insurer cannot question the beginning of the illness after the policy has been in effect for twenty-four consecutive months." The insured also agrees, with some modification, because in his brief he says that by the rider "the insurer has agreed that after the policy has been in consecutive force for a period of 24 months it will not question the date of commencement of sickness." But the insured adds that the agreement also was that the insurer would not "attempt to prove that sickness had its inception at some time prior to the issuance of the policy, or existed at the time of the application for the policy." From this last he argues that proof of time of commencement of the sickness is prohibited even for the purpose of proving fraud in securing the policy, and this brings us to the heart of the question.

I agree with the opinion that the provision in question is not the usual incontestable clause. I think its only incontestable effect is to prevent questioning the commencement of the sickness in determining whether the sickness is within the coverage of the policy. I do not think it means that the validity or existence of the policy itself

10. Stinson v. New York Life Ins. Co., 83 U.S.App.D.C. 115, 167 F.2d 233; Pennsylvania Indemnity Fire Corp. v. Aldridge, 73 App.D.C. 161, 117 F.2d 774, 133 A.L.R. 914.

cannot be contested on the ground of fraud in securing the issuance of the policy. To so construe it would be to give it the effect of a true incontestable clause. I believe the clause leaves the insurance company free to defend on the ground of fraud and if proof of fraud incidentally discloses the time of commencement of the sickness, I think there is no violation of the clause. The company is not questioning the time of commencement of the sickness; it is questioning the existence of a valid contract of insurance. I think the judgment should be affirmed.