In the Matter of HAROLD ZEIDE et al., Petitioners, against JOSEPH D. McGOLDRICK, as State Rent Administrator, Respondent.

Supreme Court, Special Term, Kings County, July 29, 1952.

*Coleman Gangel* for petitioners.

*Robert H. Schaffer* and *Biagio F. Giaquinto* for respondent.

Moss, J. Petitioner Harold Zeide is a practicing physician. Petitioner and his wife, as co-owners, on August 1, 1951, purchased a two-family house at No. 648 Vermont street, Brooklyn, for the purpose of using the upper apartment for their living quarters and the lower floor for the practice of medicine by petitioner Harold Zeide, who wished to combine his present office at No. 654 Vermont street with his new home. Petitioners' family consists of themselves, two children, aged five and three, petitioner Stella Zeide's mother, past sixty, and said petitioner's brother, thirty years of age. Petitioners were induced to buy the house because they were being evicted from No. 644 Vermont street where they formerly resided. The landlord of the latter premises obtained a certificate of eviction from the Temporary State Housing Rent Commission on August 10, 1951. Summary proceedings were commenced against petitioners at the old address and a final order of the Municipal Court was issued, with a stay granted to October 16, 1951.

Petitioners purchased the two-family house for $15,500, having paid $7,000 in cash and assumed the obligation of paying the balance in installments " precisely so that they could occupy both apartments of the premises so purchased by them free from further ouster and eviction proceedings either for office or for residence." As petitioners intended to use the upper apartment for their residence, they made application on August 8, 1951, for a certificate of eviction against Max Russo, tenant of the upper apartment at No. 648 Vermont Street. Between the date of the application and the expiration date of the Municipal Court stay on October 16, 1951, petitioners remained at premises No. 644 Vermont Street, and during this period the

lower apartment at No. 648 Vermont Street was unoccupied as the seller of the house had vacated it. Petitioners did not move into the lower apartment at or about the time of the purchase of the house because they bought the house to move into the upper apartment. However, when the stay in the Municipal Court proceedings had expired, petitioners sometime after the stay date of October 16, 1951, faced with actual eviction, were compelled temporarily to move into the vacated lower apartment at No. 648 Vermont Street without first waiting for the eviction of tenant Russo from his upper apartment. If they had the means they might have gone through the motion of living in a hotel or elsewhere while the application for a certificate of eviction against tenant Russo was being processed, in which event, in view of commission's finding of good faith, petitioners would unquestionably have come within regulation 55 of the State Rent and Eviction Regulations and Administrator's Opinion No. 82, entitling petitioners as a matter of right to possession of the upper apartment, without regard to what use would be made of the lower apartment. It is difficult for this court to believe that such a subterfuge would have had to be resorted to in order effectively to fix petitioners' right to the upper apartment.

Petitioners made their application for a certificate of eviction under subdivision 1 of section 55 of the State Rent and Eviction Regulation, reading as follows: " Section 55. *Occupancy by landlord or immediate family.* 1. A certificate shall be issued where the landlord seeks in *good faith* to recover possession of housing accommodations because of immediate and compelling necessity for his *own personal use and occupancy* or for the use and occupancy of his immediate family. As used in this paragraph, the term ' immediate family ' includes only a son, daughter, father or mother. Provided, however, that where the housing accommodations are located in a one- or two-family house, and the landlord seeks to recover possession for his *own personal use,* an immediate and compelling necessity need not be established " (emphasis supplied).

The regulations are substantially similar to section 5 of the State Residential Rent Law (L. 1946, ch. 274, as amd. by L. 1951, ch. 443) viz.: " 2 * * * The commission shall issue such an order [order of eviction] whenever it finds that: (a) the landlord seeks in good faith to recover possession of housing accomodations because of immediate and compelling necessity for his own personal use and occupancy or for the use and occu-

pancy of his immediate family; provided, however, that where the housing accommodations are located in a one- or two-family house and the landlord seeks in *good faith* to recover possession for his own *personal use and occupancy,* an immediate and compelling necessity need not be established '' (emphasis supplied).

The application of petitioners was denied on November 21, 1951, and a protest was soon thereafter filed by petitioners.

The '' Order and Opinion Denying Protest,'' dated March 7, 1952, stated in part: '' One issue is raised by this Protest of the landlord: Does the landlord seek in good faith to recover possession of the housing accommodations. The record indicates that the landlord seeks possession of the subject seven rooms, second floor apartment in a two family house *for his personal use.* \* \* \* After a careful analysis of the record the *Administrator finds that the landlord is proceeding in good faith,* but that the requested eviction is inconsistent with the purpose and intent of the Regulations. In view of the fact that the landlord has taken possession of the first floor apartment in the subject house and since his present office is but a few doors therefrom, the issuance of a certificate is not warranted in this matter.'' (Emphasis supplied.)

The finding of the administrator that petitioners were (1) acting in good faith; and (2) that they sought the premises for their personal use, met the test of the State Residential Rent Law and the regulation above set forth. As the premises were a two-family house, the said law and regulation provided that an immediate and compelling necessity need not be established. Petitioners' temporary or emergency occupancy of the lower apartment on the eve of eviction from their former premises should not be sufficient to invoke Administrator's Opinion No. 82. The tenant having refused to vacate the upper floor, and petitioners' stay of eviction from their old address having expired, they had no alternative but to move into the lower floor.

It is significant that the rent commission itself in its Rent Control Plan and Proposed Rent and Eviction Regulations, submitted to the Legislature on January 15, 1951, recommended the amendment of those sections so as to eliminate the requirement of compelling necessity in evictions affecting one- and two-family houses. The report stated in part: '' The right of an owner to live in a house which he owns is something which ought not lightly be denied him. The denial of this right is also an impediment to home buying. The Commission believes

that immediate and compelling necessity should not be a pre-requisite to the issuance of a certificate of eviction to the purchaser of a one- or two-family house, who in *good faith* seeks possession for his *personal occupancy.* * * * It is, therefore, reasonable to require only that the landlord prove that he, in *good faith,* desires *immediate possession* for *self-occupancy.* He should not be required to establish an immediate compelling necessity. However, in view of the limitation imposed upon the Commission by paragraph (f) of subdivision 1 of section 12 of the Act, the Commission recommends the amendment of that provision of the Act to give authority to the Commission to adopt such a regulation and return to the *simpler and perfectly fair test of good faith.''* (Emphasis supplied.)

"Good faith," has been defined by the Court of Appeals, as follows: "The landlord complies with the statute's demands if he seeks the eviction with the honest intention and desire to gain possession of the premises for his own use. (See *Kauffman & Sons Saddlery Co.* v. *Miller,* 298 N. Y. 38, 43; see, also, *Nofree* v. *Leonard,* 327 Ill. App. 143, 147.'') (*Matter of Rosenbluth* v. *Finkelstein,* 300 N. Y. 402, 405.)

*In Matter of Rosenbluth* v. *Finkelstein* (*supra,* p. 405), the Court of Appeals stated: "Quite obviously, the Commission either added a new requirement to the statute or misconstrued the term ' good faith ' as there used. Issuance of a certificate, eviction of a tenant, is sanctioned at the hands of a landlord who ' seeks in good faith to recover possession ' of dwelling accommodations for his own immediate occupancy. The words mean precisely what they say, and the Commission may not under the guise of administering the statute ascribe a different or unreasonable meaning to those words. The landlord complies with the statute's demands if he seeks the eviction with the honest intention and desire to gain possession of the premises for his own use. (See *Kauffman & Sons Saddlery Co.* v. *Miller,* 298 N. Y. 38, 43; see, also, *Nofree* v. *Leonard,* 327 Ill. App. 143, 147.) ''

In connection with the *Rosenbluth* case (*supra*) it should be pointed out that in speaking of recovering possession of the apartment for petitioner's own immediate and personal use and occupancy the court used the words "for dwelling purposes ''; but in doing this the court was construing the Administrative Code of the City of New York (§ U 41-7.0, subd. c, par. [2]) which expressly includes the words "for dwelling

purposes '' in the statute. However, it is significant that neither paragraph (a) of subdivision 2 of section 5 of the State Residential Rent Law, nor section 55 of the regulations, contains the words '' for dwelling purposes.'' The requirement is only that '' the landlord seeks in good faith to recover possession * * * for his own personal use and occupancy or for the use and occupancy of his immediate family ''. (§ 5, subd. 2, par. [a].) '' The words mean precisely what they say '' (*Rosenbluth* case, *supra,* p. 405).

The office of the State Rent Administrator itself has recognized that an eviction may be had under the foregoing law for the eviction of a tenant for a purpose other than a dwelling purpose, for Administrator's Opinion No. 7 has been issued entitled '' Self-Occupancy by a Landlord for Professional Purposes.'' Although the administrator in his opinion has recognized the legality of the eviction of a tenant to provide professional accommodations, this court cannot agree with that part of Opinion No. 7, which requires an immediate and compelling necessity. That requirement was expressly excluded by the Legislature with respect to a one- or two-family house; the only test being that of self-occupancy and good faith. A regulation inconsistent with the Housing Act itself is contrary to law (*Singer* v. *McGoldrick,* 102 N. Y. S. 2d 665).

Although petitioners' good faith is beyond dispute as it has been so found by the commissioner the good faith of the tenant is not so clear. The moving papers indicate that during February of 1952, the tenant informed petitioners that he had obtained quarters on Alabama Avenue consisting of an apartment of five rooms at a rental of $75 a month. They had been paying petitioners $71.30. However, '' they then demanded of me the sum of $400, and informed me that they would refuse to vacate their present quarters unless the said payment was made. I refused to make any such payment, whereupon they informed me that they would never vacate their apartment and we would never get possession ''. Attorneys' affidavits and a proposed written stipulation appear in corroboration. There is no denial of these allegations in the answering affidavit.

On the special facts of this case the commission's determination denying a certificate of eviction was without proper basis or warrant and is annulled. The petition is granted and the administrator is directed to issue a certificate of eviction.