In the Matter of LEON ROSENBLUTH, Respondent, against MAURICE FINKELSTEIN et al., Constituting the Temporary City Housing Rent Commission of the City of New York, Appellants.

Argued February 28, 1950; decided March 3, 1950.

*Tobias Weiss, Nathan W. Math, Joseph Jay* and *Alfred Weinstein* for appellants. It was not arbitrary, capricious or unreasonable for the commission to find an absence of good faith where a landlord-purchaser entered into an agreement allowing his seller to retain two of three apartments in a three-family house, leaving for his own use the sole apartment occupied by a tenant. (*Matter of Keller* v. *Finkelstein,* 274 App. Div. 890; *Matter of O'Neill* v. *Finkelstein,* 275 App. Div. 720; *Matter of Minio* v. *Finkelstein,* 275 App. Div. 964; *Matter of Santoro* v. *Finkelstein,* 276 App. Div. 950; *Matter of Park East Land Corp.* v. *Finkelstein,* 299 N. Y. 70; *Chittenden Lbr. Co.* v. *Silberblatt & Lasker, Inc.,* 288 N. Y. 396; *People* v. *Ryan,* 274 N. Y. 149; *Matter of Schmidt* v. *Wolf Contr. Co.,* 269 App. Div. 201, 295 N. Y. 748; *Matter of Paloma Estates, Inc.,* 126 F. 2d 72; *Unemployment Compensation Comm.* v. *Aragon,* 329 U. S. 143.)

*Victor Whitehorn* and *Jules Whitehorn* for respondent.

FULD, J. Although the appeal has become moot and academic, we refrain from dismissing it because of the importance of the issue presented. Affecting as it does the administration of the emergency housing legislation in the City of New York, the question is one of major importance and, because it will arise again and again, one that invites immediate decision. (See, e.g., *Matter of Glenram Wine & Liquor Corp.* v. *O'Connell,* 295 N. Y. 336, 340; *Matter of Lyon Co.* v. *Morris,* 261 N. Y. 497, 499.)

A landlord or one who becomes a landlord by purchasing residential property may not procure an eviction of a tenant unless he first obtains a certificate of eviction from the Temporary City Housing Rent Commission. That body is, however, under the necessity of issuing such a certificate in any case where the landlord or purchaser, " because of compelling necessity, seeks in good faith to recover possession of [the]

apartment for his own immediate and personal use and occupancy '' for dwelling purposes. (Administrative Code of City of New York, § U41–7.0, subd. c, par. [2].)

In the case before us, petitioner, a veteran of World War II, purchased a building containing three apartments. Concededly, there was a compelling necessity: for about two years, because of an inability to locate an apartment, he and his wife were forced to share three rooms with another married couple; the situation was further aggravated by petitioner's wife becoming pregnant and giving birth to a child in September of 1948. Nor can there be any doubt that petitioner was seeking '' in good faith to recover possession '' of the apartment for his own use. In point of fact, the Commission, in refusing the certificate, explicitly noted as the ground therefor not that '' Applicant has failed to establish good faith '', not that he '' failed to establish compelling necessity for the premises '' — two of the reasons on its printed form — but that the '' Seller [was] in possession of an apartment.''

Quite obviously, the Commission either added a new requirement to the statute or misconstrued the term '' good faith '' as there used. Issuance of a certificate, eviction of a tenant, is sanctioned at the hands of a landlord who '' seeks in good faith to recover possession '' of dwelling accommodations for his own immediate occupancy. The words mean precisely what they say, and the Commission may not under the guise of administering the statute ascribe a different or unreasonable meaning to those words. The landlord complies with the statute's demands if he seeks the eviction with the honest intention and desire to gain possession of the premises for his own use. (See *Kauffman & Sons Saddlery Co.* v. *Miller,* 298 N. Y. 38, 43; see, also, *Nofree* v. *Leonard,* 327 Ill. App. 143, 147.)

It is indisputable that petitioner wanted and sought the apartment for the use of himself and his family. There is not the slightest proof or even suggestion that he was motivated by any intent other than to gain a place in which to live. The mere fact that he agreed that his vendor might remain in possession of another apartment in the building does not permit an inference of fraud or bad faith — and no fiat or '' policy '' pronouncement by the Commission can add the one or supply the other. In short, there just is no evidence to cast doubt upon

petitioner's *bona fides*. The Commission's determination denying a certificate of eviction was, therefore, without basis or warrant, and decisions such as *Matter of Park East Land Corp. v. Finkelstein* (299 N. Y. 70) have no application.

While such a conclusion would ordinarily lead to affirmance of the Appellate Division's order, a change of circumstances herein prevents such a determination. It appears that, after the Commission had denied a certificate of eviction to him, petitioner obtained another apartment. Accordingly, and solely for that reason, the order of the Appellate Division should be reversed, with costs to the petitioner in this court, and the petition dismissed.

CONWAY, J. (dissenting). Recognizing the existence of a serious emergency in the city of New York by reason of the shortage of apartments, the serious threats to the health, safety and general welfare of the inhabitants of the city caused by " disruptive practices and abnormal conditions " and the necessity of preventing chaos and confusion resulting from such disruptive practices, the Legislature has declared it to be the policy of the city " to impose certain restrictions upon the rights of eviction of tenants from apartments in the city, for the purpose of alleviating the present housing emergency and preventing abuses." (Administrative Code of City of New York, § U41-7.0, subd. a.) To effectuate that policy, the Legislature has prohibited evictions of tenants of apartments, with certain narrow exceptions. As a prerequisite to any action or proceeding to evict, the landlord must obtain from the temporary city housing rent commission, a certificate that his case falls within one of the permissible grounds for eviction. In the instant case, it was necessary for petitioner to demonstrate that " the landlord, because of compelling necessity, seeks in good faith to recover possession of such apartment for his own immediate and personal use and occupancy as dwelling accommodations". (Administrative Code, § U41-7.0, subd. c, par. [2].) The commission has here determined that petitioner did not act " in good faith ". There was some basis in the facts of the case for such determination and, unless the courts are to undertake a plenary review of such administrative decisions and substitute their judgment for that

of the commission, we must reverse the order of the Appellate Division which has done just that.

The tenant involved herein, one Mintz, occupied his apartment with his wife and two children for upwards of nine years, long prior to the time the premises were purchased by one Landau. Difficulties and disputes relating to the making of necessary repairs in the building and the use of a garage in the rear of the building arose between the tenant and Landau, and as a result, the latter frequently threatened to compel the tenant to remove from the apartment by any means within his power.

The building contains two other apartments in addition to the one occupied by the tenant Mintz. In May of 1948, the petitioner purchased the building from Landau, who, it is alleged, as a condition of the sale, insisted upon obtaining from petitioner a two-year lease of one apartment for himself and a two-year lease of another for his parents. By agreeing to this condition, petitioner gave up any possibility of obtaining occupancy of two of the three apartments in the building. The only other apartment, of course, was that occupied by the tenant Mintz. It is undisputed that petitioner, curious as it seems, made no inspection at any time of the Mintz' apartment. It is further undisputed that Landau owns another apartment house consisting of some seventy apartments only about four blocks away from the building in question.

Immediately after the alleged purchase of the building, petitioner applied to the commission for a certificate of eviction. The application was opposed by the tenant Mintz on the ground that it was made in bad faith and that there was no compelling necessity for the obtaining possession of his particular apartment. The commission, after reviewing all the information submitted, denied the application with the somewhat cryptic notation: " Seller in possession of an apartment." That was· amplified, however, in the commission's affidavit in opposition to the proceeding subsequently commenced by petitioner to annul its determination. It was therein stated that the commission had found " that there is a complete lack of good faith on the part of said petitioner." The affidavit further states: " The Commission has followed a policy of refusing Certificates of Eviction to petitioners who proceed against a tenant other than

the seller in possession. The Commission has taken the position that such action is not in ' good faith ' insofar as the eviction of another tenant is sought, because it would encourage speculation in real estate at the expense of tenants. The Commission feels and has heretofore held that such self-created need does not entitle the petitioner to the issuance of a Certificate of Eviction. * * * ''.

Special Term denied the motion to annul the determination of the commission, but the Appellate Division, by a closely divided court, reversed and granted petitioner's application for a certificate of eviction. The majority felt that there was no factual showing of bad faith on petitioner's part, and that the '' policy '' followed by the commission was an improper attempt to add to the statute provisions not incorporated by the Legislature.

It may be assumed that it would be improper for the commission to adopt an arbitrary '' policy '' or rule of thumb, applicable to all cases, whatever their facts and circumstances, to refuse a certificate of eviction to a purchaser merely because he has leased an apartment in the premises to the seller. That would be an abdication by the commission of its duty to pass upon the merits of each application. In the instant case, however, the determination of the commission does not necessarily rest upon any such arbitrary '' policy '' or rule of thumb.

The statute requires that the application of a landlord to recover possession of an apartment be '' in good faith ''. The phrase is broad and general, as indeed it must be, to enable the administrative agency some latitude in the discharge of its statutory duty to '' effectuate the purposes '' of the law. (Administrative Code, § U41–7.0, subd. m.) The phrase is not expressly defined in the statute, but it seems clear that it connotes something more than the mere absence of misrepresentation and dishonesty, as the Appellate Division decided. If that were all that the Legislature meant by '' in good faith '', it would hardly seem necessary to have included the express requirement of good faith, for certainly the commission could refuse a certificate to an applicant guilty of misrepresentation and dishonesty even without express authority. It seems plain that the Legislature, in using the phrase, meant to confer upon the commission authority to regulate the '' disruptive practices '' which threatened the health, safety and

general welfare of the inhabitants of the city. Our language in *Matter of Park East Land Corp. v. Finkelstein* (299 N. Y. 70, 74-75) with reference to the word " substantial " contained in the same statute, is apposite here: " ' Substantial ' is a word of general reference which takes on color and precision from its total context. Having little if any meaning when considered in abstract or in vacuum, it must be defined with reference to the peculiar legal and factual setting in which it occurs. [Citation.] Although there are certainly instances where application of such a term poses questions of statutory construction — a matter for the courts — that is not true here. There is no necessity for the courts to formulate, case by case, a completely inclusive and exclusive definition of what constitutes violating a ' substantial obligation ' of the tenancy; that task is left to the commission, the agency administering the local rent laws. *In the functioning of that body, ' substantial ' constitutes a flexible guide for the exercise of its discretion to grant or withhold an eviction certificate. Applied in that manner, the word has an intelligible connotation, a meaning consistent with the design of the emergency legislation."* (Emphasis supplied.)

In the instant case, the commission has determined that petitioner was not acting " in good faith " in applying for a certificate of eviction under the circumstances. Strong and compelling reasons lie behind that determination. Petitioner was certainly aware of the emergency situation existing in the city. He was, in fact, an unhappy victim of that emergency. Yet he entered into an arrangement for the purchase of a building with three apartments whereby he voluntarily relinquished any possibility of occupying two of those apartments in reliance upon the expectation that he could evict the third tenant, a stranger to the agreement, and thus, in effect, solve his own difficulties by transferring those same difficulties to the stranger. There is the further strong suggestion that the seller, who undoubtedly could have secured accommodations in his seventy-family apartment house for himself, his parents or petitioner, joined in the arrangement out of animosity towards the tenant. I think there was ample basis in the record to sustain the commission's determination that petitioner, in becoming a party to the plan, acted in bad faith and was not entitled to a certificate of eviction.

To deny the commission power to deal effectively with situations such as the one presented here may jeopardize the eviction control program and, to some degree, encourage those evils which it was the declared policy of the Legislature to avert. Unrestricted use of the device here employed certainly would promote both evictions and inflationary speculation. (See affidavit quoted, *supra,* pp. 407–408.) As stated by the commission in its brief, " The tenant is to go out so that the seller and his parents may stay in. It is only the eviction of this tenant that makes it possible for the old owner to make the profitable sale without loss of possession." The commission brief also properly points out that " In adopting a course aimed to deprive the tenant of his housing accommodations, the landlord [petitioner] also restricted his opportunity to satisfy his own need for housing. He was not compelled to buy the house here in question. But he chose to do so even though the seller required him to dispose of two-thirds of the accommodations in that house. He deliberately limited his opportunity to satisfy his own need, so that it could be relieved only through the eviction of the tenant. By electing to make a purchase in which he disposed of two-thirds of the accommodations in the house he bought, the landlord acted to continue his own need. Such self-continued need negates a showing of good faith under the statute."

Prior to the Appellate Division decision herein, the commission's power to find an absence of good faith, upon the particular facts of situations similar to the instant case, has uniformly been upheld. (See *Matter of Keller* v. *Finkelstein,* 274 App. Div. 890; *Matter of O'Neill* v. *Finkelstein,* 275 App. Div. 720; *Matter of Minio* v. *Finkelstein,* 275 App. Div. 964.) It is of the utmost importance to our problem that, with knowledge of these decisions and with knowledge of the commission's attitude in these matters, the local legislative body has repeatedly re-enacted the statute without altering it in regard to the requirement of good faith. (See Local Laws, 1948, No. 41 of City of New York, and Local Laws, 1949, Nos. 7, 22, 73, of City of New York.) The case thus comes squarely within the familiar principle of statutory construction, well stated in *Matter of Gilmore* v. *Preferred Accident Ins. Co.* (283 N. Y. 92, 97) : " * * * The use of these terms, therefore, falls within the recognized principle that where terms have been defined by the courts and the

Attorney-General, it is presumed that the continued use of those terms by the Legislature subsequent to the definitions is in accordance with the meaning thus defined." (See, also, *Matter of Scheftel,* 275 N. Y. 135, 141, and cases there cited.)

The order of the Appellate Division should be reversed and that of Special Term affirmed.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE and FROESSEL, JJ.. concur with FULD, J.; CONWAY, J., dissents in opinion.

Order reversed, etc. [See 300 N. Y. 713.]