In the Matter of ETHEL BROWN, Petitioner, against JOSEPH D. McGOLDRICK, as State Rent Administrator, Respondent.

Supreme Court, Special Term, Bronx County, July 31, 1952.

*Horace I. Gordon* for petitioner.

*Robert H. Schaffer* and *Sante J. Chessari* for respondent.

 

MATTHEW M. LEVY, J. This is an article 78 proceeding brought by the landlord to review the determination of the Temporary State Housing Rent Commission which refused the issuance to her as the owner of an apartment house at 1427 Bryant Avenue in The Bronx of a certificate of eviction with respect to apartment No. 3, on the third floor, consisting of five rooms. Eviction of the tenant from this apartment is sought on the ground that the landlord wishes to occupy the premises for herself and her family, consisting of husband, brother and niece. They had occupied a five-room apartment in Manhattan, which they were compelled to vacate in order to facilitate the construction of a city housing project. Prior to this eviction and allegedly in contemplation of it, the petitioner, by contract dated November 23, 1951, arranged to purchase the Bryant Avenue premises. She claims that she did not obtain actual control of the dwelling until the closing and the passing of title on November 30, 1951.

I have carefully reviewed the evidence. The subject premises consist of a three-story and basement frame building containing four apartments. The record shows that, on or about November 27, 1951, four days after the date of the written contract of sale, landlord's grantors vacated a five-room apartment known as apartment No. 2. Extensive alterations in that apartment were started on November 28, 1951, and were completed about December 18, 1951 — nearly three weeks after title was claimed by the landlord to have closed — by which alterations this apartment was converted into furnished rooms with kitchen privileges. The records of the department of housing and buildings of the city of New York disclose that, as of March 11, 1952, in violation of sections 300 and 302 of the Multiple Dwelling Law, " the following alterations have been made: 2nd sty. apt. 2 — former door ways between rooms of apt. have been closed up with lath and plaster partitions. Note: Rooms used for single occupancy. Restore the above premises to the legal condition existing prior to the making of said alterations ", and that as of March 11, 1952, the owner was directed " permanently [to] discontinue the unlawful use as furnished rooms of the 5-room apt. now used for single-room occupancy, at the 2nd sty, apt. 2. Sec. 9 and subd. 1 of Sec. 248." Before the Temporary State Housing Rent Commission, evidence was also presented to show that there were three names in the letter box for apartment No. 2; that on or about December 8, 1951, a sign was seen in one of the windows of that apartment reading: " Furnished Rooms inquire within apt. 2 "; and again in February, 1952, a sign was seen on the wall to the right of the

entrance door reading, "Furnished room inquire supt.," with an arrow pointing to inside the premises.

Subdivision 1 of section 55 of the State Rent and Eviction Regulations of the Commission provides, so far as applicable here, that "A certificate shall be issued where the landlord seeks in good faith to recover possession of housing accommodations because of immediate and compelling necessity for his own personal use and occupancy or for the use and occupancy of his immediate family. As used in this paragraph, the term 'immediate family' includes only a son, daughter, father or mother." The local rent administrator, after conference, found that the landlord had failed to establish good faith and compliance with subdivision 1 of section 55, and accordingly denied her application for a certificate of eviction. Thereafter the landlord filed a protest with the State Rent Administrator, who affirmed the decision of the local administrator, and, also considering the matter *de novo*, denied the certificate of eviction on the same grounds.

If the landlord seeks the eviction of the tenant in apartment No. 3 with the "honest intention and desire" to gain possession of the premises in question for her own use (*Matter of Rosenbluth* v. *Finkelstein*, 300 N. Y. 402, 405), she would be acting in good faith. Her proof in that regard, other than her claimed need for a residence, consisted of a denial that any vacancy existed at the time she took title or thereafter, and of a denial that she had made or had known of the alterations or violations with respect to apartment No. 2. On the conflicting evidence in this record, the respective functions of the administrator and of the court are clear. As I had occasion to remark on the argument of this matter, the court may not substitute its judgment for that of the administrative tribunal (*Matter of Kaplan* v. *McGoldrick*, 279 App. Div. 615; *Matter of Mounting & Finishing Co.* v. *McGoldrick*, 294 N. Y. 104). Its determination is to be accepted by the court "if it has 'warrant in the record' and a reasonable basis in law." (*Board* v. *Hearst Publications*, 322 U. S. 111, 131.) "'The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.'" (*Rochester Tel. Corp.* v. *United States*, 307 U. S. 125, 146; *Matter of Mounting & Finishing Co.* v. *McGoldrick, supra; Matter of Katz's Delicatessen* v. *O'Connell*, 302 N. Y. 286; *Matter of Frissell* v. *McGoldrick*, 300 N. Y. 370.)

In the case at bar, unlike the situation in *Matter of Rosenbluth* v. *Finkelstein* (*supra*, pp. 405–406) there is "evidence to

cast doubt upon the petitioner's *bona fides.*'' The administrator may well have held that, while formal title did not pass to the petitioner until November 30, 1951, she nevertheless had control of the premises even prior and certainly subsequent thereto, and that rather than occupy available apartments herself she wanted to obtain increased rentals from them when subdivided; and that, on the basis of the owner's nonoccupancy of apartment No. 2 when it was available to her and, instead, its utilization by her for rental purposes to outsiders (notwithstanding her claimed need for a personal residence), the vacancy that would now result from the present ouster of the tenant from apartment No. 3 would in all likelihood also not be utilized by the owner to satisfy that need. And the determination by the trier of the facts may not be reversed on this record if he infers what may occur from what did occur.

The petitioner's thinking at one time may have been ambivalent, but in the conflict between profit motive and residence needs, she herself seems to have resolved upon the former as the propelling factor. What proof is there that a similar resolution might not occur again? Certainly not on the basis of the petitioner's veracity — for the administrator may not have believed the petitioner's claim of good faith, because, among other valid reasons, the public record and the physical facts disproved her denials of knowledge as to what was being done on and the status of her own property. One's personal good faith is a concept of one's own mind and inner spirit, but is not conclusively to be determined by one's protestations alone — its existence as a substantive fact may properly be established on the basis of external manifestations as well. In my view, absence of good faith here is a reasonable conclusion; or at least it may not on this record be determined by the court that such a conclusion is unreasonable.

In this proceeding to annul the determination of the State Rent Administrator upon the alleged ground that it is arbitrary, capricious or unlawful, I certainly cannot find that the petitioner has sustained her burden of proof in that regard. The petitioner's inability to have occupied a portion of her own property seems to have been both a self-inflicted and a tactically desired hardship. The application is denied, and the petition is dismissed.