The order dismissing the indictment should be reversed and the indictment reinstated.

Cox and FRANK, JJ., concur with RABIN, J.; BASTOW, J., dissents and votes to reverse in opinion in which PECK, P. J., concurs.

Order affirmed.

In the Matter of MORRIS LEVINE, Respondent, against CHARLES ABRAMS, as State Rent Administrator, Appellant.

First Department, February 24, 1956.

*Beatrice Shainswit* of counsel (*Nathan Heller,* attorney), for appellant.

*Milton B. Schaffer* for respondent.

BREITEL, J. P. The State Rent Commission appeals from an order, at Special Term, in an article 78 proceeding, directing it to issue a certificate of eviction of a tenant in order to provide space for a resident superintendent.

The question in the case is whether there is substantial basis in the record for the Rent Commission to have refused such certificate of eviction. It declined, on the grounds that (1) the landlord was motivated by bad faith, intending only to retaliate against a tenant; and (2) the grant of a certificate, in the circumstances, would be inconsistent with the purposes of the statute and result in circumvention thereof.

The order should be reversed, the petition dismissed, and the determination of the Rent Commission declining to issue a certificate of eviction should be reinstated.

Involved is a fifteen-apartment tenement on the lower east side, at 427 East 6th Street. The tenant, a single woman, occupies a two-room apartment on the fifth floor. Her rent is $24.20 a month. Under section 83 of the Multiple Dwelling Law, in

such building the landlord is obligated to maintain a resident superintendent. Although the landlord has owned the building since 1945, he has not complied with the law. On January 27, 1954, he received a notice of violation. He sought eviction of the tenant on the ground there was an immediate and compelling necessity for the subject apartment, that is, to provide space for a prospective resident superintendent.

Concededly, some six different apartments had become vacant since the notice of violation and during the pendency of the Rent Commission proceedings. The landlord elected not to use any of these vacancies for housing a resident superintendent. As to four of these vacancies, he contends that they were furnished or partly furnished, and, therefore, merited a higher rental value than would be justified in using the space for a superintendent. As to the remaining two vacancies he contends that the apartments, although unfurnished, were of higher rental value than that occupied by the tenant, and therefore did not warrant use for a superintendent.

Concededly too, tenant had made a number of complaints to the appropriate authorities, most of which had proven justified, with respect to light, heat, disrepair, payment of excess rent over the maximum, and violation of the Multiple Dwelling Law. Landlord referred to her as a troublemaker, as a leader among the tenants, and as one responsible for the notice of violation with respect to a resident superintendent.

The Rent Commission held that, in view of the vacancies that had arisen, particularly of the unfurnished apartments, there was no basis for the eviction. It also held, as to the use of an alternative apartment having a higher rental value, that, if this resulted in any substantial impairment of the income from the building, the landlord could obtain an adjustment in the maximum rents for the building. It found, too, that the landlord had initiated the proceeding for the issuance of a certificate against this tenant solely for the purpose of retaliation.

Assuming that a landlord must establish immediate and compelling necessity in order to obtain the eviction of a tenant to make space for a resident superintendent, it is evident on this record the landlord has made no such showing. True, he is under an immediate and compelling necessity to find some space for a resident superintendent, but the evidence is conclusive that there is no such necessity to obtain the apartment of this particular tenant in order that he may comply with the law. The cases in which it has been held that the landlord may proceed against any tenant in order to make space for a resident super-

intendent involve situations where there was no clear showing that the landlord had available alternative, vacant space. (*Matter of Jimenez* v. *Coster,* 276 App. Div. 457; *Matter of Sudair Realty Corp.* v. *McGoldrick,* 283 App. Div. 1112; cf. *Matter of Purvis & Clauss Realty Corp.* v. *McGoldrick,* 283 App. Div. 720.)

Actually, neither the State Residential Rent Law (L. 1946, ch. 274, as last amd. by L. 1955, ch. 685) nor the Rent and Eviction Regulations adopted by the Rent Commission, pursuant to the statute, expressly cover the granting of certificates of eviction in order to obtain space for resident superintendents, mandated by section 83 of the Multiple Dwelling Law. Section 5 of the statute governs evictions of tenants. The subdivision of that section which appears to be applicable provides that: "No tenant shall be removed or evicted on grounds other than those stated in subdivision one of this section unless on application of the landlord the commission shall issue an order granting a certificate of eviction in accordance with its rules and regulations, designed to effectuate the purposes of this act, permitting the landlord to pursue his remedies at law" (§ 5, subd. 2). The subdivision continues to authorize evictions (1) where the landlord seeks possession for his personal use or that of his immediate family; or (2) in order to remove certain kinds of subtenants; or (3) where possession is sought in order to alter, remodel or demolish. In only the first of these situations must there be a showing of immediate and compelling necessity, and in all of these situations, there must be a showing of good faith.

When one examines the regulations, it is under section 54 of the Rent and Eviction Regulations that the certificate is granted in a case such as this. Section 54 expressly provides that certificates shall be issued pursuant to it or sections 55, 56, 57, 58 or 59. All of the enumerated sections relate to circumstances entirely different from the one involved where space is sought for a resident superintendent. They relate to evictions for (1) obtaining occupancy by the landlord for his own use or that of his immediate family; (2) certain kinds of subtenancies; (3) alteration or remodeling; (4) demolition; or (5) withdrawal from the rental market. Consequently, issuance of the certificate sought in a case like this must find its basis in section 54 itself.

The appropriate language in section 54 of the regulations reads as follows: "The Administrator may also issue orders granting certificates in other cases if the requested removal or

eviction is not inconsistent with the purposes of the Act or these Regulations and would not be likely to result in the circumvention or evasion thereof '' (§ 54, subd. 1). Nothing is said about immediate and compelling necessity. Nothing is said about good faith. Yet this portion of section 54 provides the only basis upon which a landlord may obtain a certificate of eviction with the purpose of making space for a resident superintendent. It is sufficient authority, but it is not circumscribed by particularized restrictions. Evidently, its application rests in broad administrative application and construction of the statute, in order to effectuate the purposes thereof and to prevent its evasion — a duty delegated to the commission. Indeed, the finding of the Rent Commission in this case is based not on any narrowly circumscribed section of the statute or regulations, but on this broad authority (see quotation from the findings, *infra*).

If section 54, and particularly the broad language quoted, is not authority for issuing a certificate of eviction to make space for a resident superintendent, then there is no authority at all for such a certificate. The provisions of section 5 of the statute quoted above are quite clear. The grounds for eviction are spelled out in subdivisions 1 and 2 of section 5, but '' making space for a resident superintendent '' is not covered in the particularized grounds. Then there is the further provision authorizing evictions under the regulations of the commission. The power of the commission is further bolstered by subdivision 3 of section 5 of the statute, which authorizes specifically the adoption of regulations to control evictions in instances not specified in subdivision 2. Such regulations must be in furtherance of the purposes of the statute and to prevent circumvention and evasion thereof. Hence, it is on this broad language that the landlord must rely, and yet this same language, as pointed out, contains no special restrictions on the scope of administrative application or construction.

The commission and the courts have in general, however, applied the rule of immediate and compelling necessity, evidently by analogy to the provision for a landlord's application to obtain space for himself or his immediate family (§ 5, subd. 2, par. [a]). The commission, at least, has also made the good faith of the landlord a precondition to the granting of certificates for a resident superintendent.

But, however the question is analyzed, it is clear that in this case the landlord did not have an immediate and compelling necessity for *this* apartment, as distinguished from the necessity

that he had for *an* apartment. Similarly, if material, the record amply sustains the commission's finding that the landlord was not acting in good faith.

It is urged by the landlord, and it was so viewed by Special Term, that *Matter of Gross* v. *McGoldrick* (308 N. Y. 651) is dispositive of this case. It is contended that the holding there is that the commission is precluded from any further inquiry, so long as the landlord shows an immediate and compelling necessity for *an* apartment, and the certificate must issue forthwith. The *Gross* case does not go so far. The Court of Appeals did not write any opinion, although there was a vigorous dissent by Judge (now, Chief Judge) Conway. In that case, the landlord had a prospective resident superintendent, for whom he required space. Although there was evidence that the tenant had made complaints against the landlord, and was, therefore, a likely object for retaliation, there was no showing that there was available a suitable apartment for the resident superintendent. Indeed, the Rent Commission expressly found, unlike its finding here, that there was immediate and compelling necessity for the *subject* apartment. The particular superintendent required a four-room apartment. Two apartments, which became vacant after notice of violation under section 83 of the Multiple Dwelling Law, and pendency of the proceedings before the Rent Commission, were three-room apartments. The tenant, in order to disprove the necessity for his apartment, advertised for superintendents, and found some, who were willing to be employed and reside in three-room apartments. Obviously, neither the purpose nor the effect of the emergency rent laws should be to transfer the management and hiring responsibility from the landlord to the tenant. Consequently, we may assume that the court found no substantial evidence that the landlord did not need the tenant's apartment or that bad-faith was the motivation for his action.

Moreover, it is notable that in the *Gross* case the Appellate Division (283 App. Div. 1110), in directing the issuance of a certificate of eviction, relied upon *Matter of Purvis & Clauss* v. *McGoldrick* (283 App. Div. 720, *supra*) and *Matter of Sudair Realty Corp.* v. *McGoldrick* (283 App. Div. 1112, *supra*), thus sustaining this analysis of the *Gross* case. Further, lending support to this view, are the cases where landlords have sought evictions in order to obtain the space for their own use or that of their immediate families. In such instance the test of immediate and compelling necessity is expressly mandated. In considering the presence of immediate and compelling necessity, the courts have looked to the availability of appropriate alter-

native space. (*Matter of Bromberg* v. *McGoldrick*, 306 N. Y. 690; *Matter of Rosenbluth* v. *Finkelstein*, 300 N. Y. 402.)

In summary, in considering an application for a certificate of eviction under section 54 of the regulations on the ground that the landlord requires space for a resident superintendent, under compulsion of section 83 of the Multiple Dwelling Law, the Rent Commission should inquire, as it does, into whether there is sufficient necessity for such a certificate with respect to the particular premises. Of course, if there are no alternative premises, a certificate must issue, for the landlord may not be compelled to maintain the premises in violation of the law, subject to the sanctions imposed for such violations. In considering the necessity for the certificate, where there are reasonably alternative premises available (at least where there is vacant alternative space), the commission may evaluate also the motivation which impels the landlord's action. In this connection, the alternatives need not be identical, but the differences, financial and otherwise, must be reasonably assessed. If there is warrant in the record to substantiate the commission's action as reasonable, its determination must stand, and is not subject to further review by the court, even if the court might have reached a different result on the basis of the evidence. In this case, the record amply justifies the commission's finding which, in part, reads as follows: '' The record clearly shows that during the course of the instant proceedings at least three units, Apartments Nos. 2, 3, and 11 were vacant and subject to the landlord's control. It is the opinion of the Administrator that the landlord was obligated to alleviate his alleged need to obtain housing accommodations for a superintendent by utilizing one of these vacancies. As the record indicates, the landlord, in spite of the housing violation filed against the subject dwelling and even after the Local Rent Administrator denied the issuance of a certificate of eviction on July 22, 1954, proceeded to lease vacancies to new tenants at rent increases. The Administrator must conclude, under the facts and circumstances of the instant case, that the landlord is solely interested in obtaining higher rentals from the vacancies instead of attempting to remove the housing violation and the threat of legal prosecution for failure to comply with the law.  *   *   * The Administrator further finds that the requested eviction, under the facts and circumstances of the present case, would be inconsistent with the purposes of the Act and the Regulations and would be likely to result in the circumvention or evasion thereof.''

In concluding, it should be noted that retaliation against tenants was anticipated and is a matter of special concern in the statute, for that is made expressly unlawful (§ 10, subd. 2).

Accordingly, on the law, the order of Special Term should be reversed, the petition dismissed, and the determination of the commission declining to issue a certificate of eviction reinstated, without costs to either party as against the other.

Botein, Rabin, Cox and Frank, JJ., concur.

Order unanimously reversed, the petition dismissed, and the determination of the commission declining to issue a certificate of eviction reinstated, without costs to either party as against the other. Settle order on notice.