Matthew M. Levy, J.
New York Fire Insurance Rating-Organization is an unincorporated association. (NYFIRO is its recognized alphabetical moniker, and so will it be called hereinafter.) NYFIRO has been engaged in promulgating fire insurance rates since prior to 1900, and, since the passage of the rating law in 1922, it has been and still is a statutory fire rating organization licensed under article VIII of the Insurance Law. Approximately 90% of all fire insurance companies doing-business in the State of New York are members of NYFIRO. *487 Its purpose is to maintain an integrated system of fire insurance ratings. NYFIRO furnishes to all of its members and subscribers its rating service; and its subscription or membership services are open to any fire insurance company desiring to do business in this State. NYFIRO is authorized by all of its members and subscribers to make rate filings with the State superintendent of insurance, subject to the right of each member or subscriber to ask for deviations in particular cases. In accordance with this power, NYFIRO has had on file with the superintendent specified ratings for specific types of residential properties called “ Dwelling Classes ”.
Allstate Insurance Company (hereinafter referred to as “ Allstate ”) is an Illinois corporation authorized and licensed under the laws of the State of New York to engage in the business of fire insurance in this State. Allstate is not now nor ever has been a member of NYFIRO. On either August 30,1954 or September 15, 1954 (the parties are in disagreement as to the exact date) Allstate made certain independent rate filings with the superintendent of insurance relating to proposed rates for the same types of dwellings. These rates were lower than those in effect for members of NYFIRO by either 35% (as NYFIRO alleges) or by 20% (as Allstate alleges). The superintendent of insurance approved the rates with only slight modifications and they were put into effect by Allstate soon thereafter. That presented a competitive threat to the members of NYFIRO, and, on or about October 14, 1954 NYFIRO (and, a few days thereafter, eight of its members) applied to the then Superintendent of Insurance, Alfred J. Bohlinger, for a hearing on the Allstate filing, pursuant to subdivision 6 of section 184, subdivision 3 of section 186, section 186-b and section 278 of the Insurance Law. The petitioners claimed that they were parties aggrieved by their competitor’s filing and sought a hearing to nullify the Allstate rates as inadequate, unreasonable and unfairly discriminatory — in violation of sections 183 and 184 of the Insurance Law.
The petitioners’ application for a hearing was granted. It was held on January 5, 1955 and was presided over by a deputy superintendent of insurance. At the conclusion of the hearing he granted Allstate’s motion to dismiss the proceeding. The specific grounds of dismissal were stated to be: “ (1) that the procedure in 186(b) is not available to the petitioners for the reason that the section is limited to an insurer or rating organization which made a filing and is aggrieved by an order of the Superintendent made without a hearing with respect to such filing, (2) that petitioners are not aggrieved persons or an *488 organization within the meaning of Subsection 3 of Section 186, and (3) assuming for the purposes of this motion that the petitioners are aggrieved, they have not alleged facts entitling them to a hearing under Section 186(3).” On January 27, 1955 Superintendent B'ohlinger approved the opinion of the deputy superintendent dismissing the petition upon the ground that the petitioners were not aggrieved, within the meaning of the statute, and, if aggrieved, did not show good faith as required by the statute.
On March 3, 1955 the respondent Holz became the superintendent of insurance. He was asked by the petitioners to grant a hearing on his own motion. Thereupon, and on April 25, 1955, he gave notice to the parties that he would conduct a hearing ‘‘ to review the filings of the Allstate Insurance Company in dwelling classes which became effective on September 21st, 1954, for the purpose of determining whether such rate filings meet the standards prescribed in Article VIII of that law.” The hearing was concluded on May 19, 1955. On July 1, 1955 the superintendent held that the filings were inadequate and ordered the rates of Allstate adjusted, so that they were approximately 15% below the rates of NYFIRO instead of 20% below those rates, as originally filed. The reason for the difference in rates between NYFIRO and Allstate appears to be that Allstate pays less commissions to agents and brokers for procuring its business, and that gives Allstate a competitive advantage which in part enures to the benefit of the premium-paying public.
While the matter was under consideration by the superintendent, and on May 26, 1955, NYFIRO and the individual member fire insurance companies above referred to instituted this article 78 proceeding against the superintendent and Allstate to review and vacate the determination of Superintendent Bohlinger, dated January 27, 1955, which denied petitioners’ request for a hearing with respect to issues arising under article IX-D of the Insurance Law, and for an order directing that Superintendent Holz find that the petitioners are aggrieved parties within the meaning of subdivision 3 of section 186 and section 186-b of the Insurance Law, that the hearing terminated by him be continued, and that a decision be reached as to all of the issues raised by the petitioners’ written application requesting a hearing as aggrieved parties pursuant to article VIII of the Insurance Law, and for such other and further relief as may seem just and proper. The proceeding was adjourned from time to time, and in due course, the parties finally came to grips with the problems involved and submitted the matter to me for determination.
*489 A number of difficult and absorbing issues have been vigorously presented and ably briefed on the present submission, and I have been urged to undertake to endeavor to resolve them. Some of these issues are: (1) Is the determination of Superintendent Bohlinger of January 27, 1955 — granting the Allstate motion to dismiss the proceeding — subject to judicial review? (2) Assuming that the Bohlinger action is subject to judicial review, is the question moot in view of the fact that, at a subsequent hearing held by the successor official, Superintendent Holz, the issues which the petitioners sought to have considered at the first hearing were there considered? (3) Assuming that the proceeding is subject to judicial review and that the question is not moot, are the petitioners ‘‘ aggrieved ’’ within the meaning of subdivision 3 of section 186 and section 186-b of the Insurance Law?
While the first and third problems are worthy indeed of careful judicial analysis, research and pronouncement — and I have enjoyed studying them — I have come to the considered conclusion that, as a judge, I should not rush in and express my views where it is not judicially necessary for me to tread. I shall therefore consider the second question first. On that issue, the respondents argue that the present proceeding should be dismissed because the hearing subsequently held by the superintendent has rendered the earlier determinations academic. There is no dispute that the hearings held afterwards on the initiative of the superintendent covered the same subject matter. Indeed, the petitioners in their brief admit that the only issue which remains undecided is ‘‘ the right of petitioners to initiate a hearing upon the specific grievances set forth in their applications requesting a hearing pursuant to sections 186(3), 186(b) and 278 of the Insurance Law ”, but they argue that they ought to have their rights adjudicated by me even though they will not get any immediate value out of such a decision as far as the Allstate filing is concerned.
In my view, the new superintendent had the power, on his own motion, to grant a hearing on the filing of rates by Allstate — regardless of the decision of his predecessor that the application of NYFIBO and its constituent companies was not to be proceeded with because they were not parties “ aggrieved ” within the meaning of the statute. What Superintendent Holz did was, in effect, to grant a rehearing of his predecessor’s decision; and, at the subsequent hearings, the petitioners were treated as if they were parties aggrieved. The hearings were proceeded with quite plainly as if NYFIBO and Allstate were adversary parties. They were given every opportunity to go *490 into every relevant issue thoroughly and fully. While the superintendent began the hearing by stating that it was called on his own initiative, both sides were represented by counsel, witnesses were called to testify and the history of Allstate and the data of the filings were examined in great detail. The Holz decision on the merits has, in effect, overruled the earlier Bohlinger decision — that the superintendent of insurance will not act unless a court first determines that NYFIRO or other fire insurance companies, filing different rates, are aggrieved parties. Even if it were to be determined now that Superintendent Bohlinger construed the meaning of the statute too narrowly, and that the petitioners were truly aggrieved parties, all that could result is that Superintendent Holz would be directed to give the petitioners a hearing and to determine their petition on the merits. That he has already done, and the correctness of his conclusion is not now before me. Until such final ruling by the superintendent of insurance is objected to on its own by way of an independent proceeding before the court, no legal injury or factual injustice has resulted. The present Allstate rates, as filed and modified, would not be affected by any determination that I might make in the instant proceeding.
The question before me is thus narrowed to the issue as to whether the Bohlinger decision that the petitioners were not parties “ aggrieved ” has become moot. It would not be moot if it presented a question of great public importance or of overriding public interest. But that is not enough to compel or warrant judicial determination. Something more must be added, and that is that, as such, the question must be one that is likely to arise immediately at the behest of other litigants, or to arise and trouble the courts over and over again, or to settle a question as to which there is conflict of judicial opinion. There is no showing before me that there is a likelihood that other fire insurance companies will make independent filings, or that there is a probability that there will be a flood of litigation under this statute in which the question of who is or who is not an aggrieved party will be of importance.
The petitioners admit that the general rule in New York and elsewhere is that moot questions will not be decided. Nevertheless, they sincerely and seriously seek to avoid the effect of this pragmatic principle of judicial reticence by reference to certain precedents, which, they say,.' highlight the road to be traveled on this issue. These decisions are, however, readily distinguishable. Thus, in Matter of Bosenbluih v. Finkelstein (300 N. Y. 402) the Court of Appeals, at page 404, pointed out that the question, “ [a]ffeeting as it does the administration of *491 üie emergency housing legislation in the City of New York, * * * is one of major importance and, because it will arise again and again, one that invites immediate decision.” In Matter of Fairchild (151 N. Y. 359) the issue was decided, even though the election contest was over, in a desire to prevent future difficulties in the political division of the government. In Matter of Glenram Wine $ Liq. Corp. v. O’Connell (295 N. Y. 336) the court decided the case even though the wholesale liquor license had expired, because it involved a question of the State Liquor Authority’s attempting to escape the effect of a previous Court of Appeals decision by means of a mere verbalism. The other cases relied upon by the petitioners are equally inapplicable to the present situation. The refusal to decide the question now before me will not cause any administrative problems, nor will it result in a deliberate perversion of a judicial statutory interpretation, nor will political embarrassment result, nor will there be any practical problems caused by such a refusal.
I have therefore determined that, on the present record, a decision should not be made with respect to the other issues — however interesting — raised in this proceeding. I cannot, however, refrain from noting at least two of them again, and in a somewhat different vein: (1) Who is an “ aggrieved person or organization ” within the meaning of subdivision 3 of section 186 of the Insurance Law — and the effect (if any) of the proposed and unenacted legislative amendment known as Assembly Introductory No. 3473, Assembly Print No. 3728, February 21,1956 introduced by Mr. Mare sea; and (2) Whether, under section 34 of the Insurance Law there exists the right of judicial review of the determination of the superintendent — and the effect (if any) of the proposed and unenacted legislative amendment known as Senate Introductory No. 2774, Senate Print No. 3030, February 21, 1956 introduced by Mr. McCullough.*
The motion before me presently is denied, and the instant proceeding is dismissed. An order has been duly entered accordingly.

 Now L. 1956, ch. 932, off. April 21, 1956.— [Rep.