Thomas P. Parley, J.
This proceeding brought pursuant to article 78 of the Civil Practice Act seeks review of a determination or ruling of the State Lottery Control Commission (hereinafter referred to as the Commission). The respondent Commission has interposed objections in point of law as to the sufficiency of the petition. The respondent Town Clerk of Oyster Bay has submitted an answer. The principal contention in support of the objections in point of law is that the petitioners are not aggrieved parties entitled to seek relief by this proceeding.
With the exception of the Hicksville Bingo Hall, all the petitioners claim to be charitable organizations holding licenses duly issued by the respondent Town Clerk to operate games of bingo on future dates at the Hicksville Bingo Hall. On December 5, 1961 the respondent Commission notified the respondent Town Clerk as follows: “ It is the decision of the state lottery control commission that Bingo shall not be played in Hicksville Hall as a result of the testimony adduced before this Commission. This is effective immediately. Please take necessary steps to enforce this decision. ’ ’
According to the allegations of the petition, which must be accepted as true for the purposes of testing its sufficiency pursuant to section 1293 of the Civil Practice Act, the above decision or ruling was made without prior notice to the petitioners affording them the opportunity of a hearing and had the effect of revoking their bingo licenses which designated the Hicksville Bingo Hall as the situs of all prospective games. There are further allegations that the violations of law or irregularities which precipitated the aforesaid ruling took place during games sponsored by other organizations, prior to the time that petitioners conducted any bingo games at the hall.
Article 19-B of the Executive Law (short title, “ State Lottery Control Law ”), in creating the State Lottery Control Commission to police and regulate the game of bingo, gives that body the power to ‘1 Supervise the administration of the bingo licensing law and to adopt and amend rules and regulations governing the issuance and amendment of licenses thereunder and the holding, operating and conducting of games of chance under such licenses, which rules and regulations shall have the force and effect of law (Executive Law, § 435, subd. 1, par. [a].) *560 The Commission is also given the power (Executive Law, § 435, subd. 1, par. [c]) to “ Suspend and revoke licenses, after hearing, for violation of the law, rule or regulation under which the license was issued ” (court’s emphasis). Rule IX of the Rules and Regulations of the State Lottery Control Commission adopted pursuant to article 19-B of the Executive Law provides that either the local governing body issuing the license or the Commission may suspend or revoke a license after “ notice of hearing to be served personally upon an officer of the licensee or the member in charge of the conduct of the games or to be sent by registered or certified mail to the licensee at the address shown in the license.”' (Rule IX, subd. 1; 19 NTCRR, § 290.1, subd. [b].) Article 14-G- of the General Municipal Law (short title, “ Bingo Licensing Law ”) also provides that the “ control commission shall have the power and the authority to suspend any license issued by such governing body and to revoke the same, after notice and hearing ” (General Municipal Law, § 484; court’s emphasis).
Although the petition does not fully describe the nature, character or status of the petitioning “ charities ” and alleges the adverse effect of the Commission’s decision upon them in rather conclusory language, this court is of the opinion that it is sufficient as a pleading insofar as the “ charities ” are concerned. In order to obtain the status of bingo licensees, each of these petitioners had to submit a written application for a license setting forth ‘1 sufficient facts relating to its incorporation and organization to enable the governing body of the municipality to determine whether or not it is a bona fide authorized organization * * * and the place or places where, the date or dates and the time or times when such games of chance are intended to be held, operated and conducted * * * [and] the specific purposes to which the entire net proceeds of such games of chance are to be devoted and in what manner ”. (General Municipal Law, § 480, subd. 1.) Section 483 of the General Municipal Law, in setting forth the form and contents of the license, and the provisions for its display, provides that it shall contain a description of “ the place or places where and the date or dates * * # when, such games of chance are to be conducted * * * and each license issued for the conduct of any game or games of chance shall be conspicuously displayed at the place Avhere same is to be conducted at all times during the conduct thereof.”
It thus appears that the bona fides of the sponsoring organizations was established to the satisfaction of the ToAvn Clerk at the time the license was issued and that the situs of the proposed *561 games was an-integral part of both the application for the license and the license proper, which was to be displayed at such situs. Under the circumstances, the effect of the Commission’s ruling that bingo could no longer be played at the Hicksville Bingo Hall was to so impair and vitiate the petitioners ’ rights under the license that a de facto revocation took place without the required notice and hearing. Such procedure clearly violated the statutory rights of the licensees (the charities) and their petition should be sustained as a pleading.
A point not raised by respondent in its brief, but which the court feels worthy of comment, is whether the issues involved here have become academic by reason of the passage of time. The date fixed in the license for the playing of one of the games was December 8, 1961. One of the affidavits in support of the petition speaks of prospective games to be held ‘ ‘ within the next few days This affidavit was sworn to December 7, 1961. The licenses in question are not before the court and so it is impossible to accurately ascertain whether this determination will be moot. However, because of the importance of the issue presented, affecting as it does the administration of the bingo legislation in this State and, because of the likelihood that it will arise again, jurisdiction will be entertained (Matter of Rosenbluth v. Finkelstein, 300 N. Y. 402; Matter of Rockwell v. Morris, 12 A D 2d 272, 283, affd. 10 N Y 2d 721).
However, that portion of the motion seeking dismissal of the petition as to the Hicksville Bingo Hall is granted. Other than being named in the caption of the proceeding, the status of this ‘ ‘ party ’5 is not described in the petition nor are there any allegations showing any connection between it and the respondents. Furthermore, it has not verified the petition or submitted any affidavits in support thereof. (Civ. Prac. Act, § 1288.) In view of the statutory scheme for the licensing of bingo games, it does not qualify as a party “ united in interest ” to the bingo licensees which could take advantage of rule 99 of the Buies of Civil Practice and has no standing before this court.
Accordingly, the respondent Commission shall serve and file its answer to the petition within five days after service upon it by petitioners of a copy of the order to be entered hereon with notice of entry. Further proceedings shall be in accordance with section 1293 of the Civil Practice Act.
In the interim, pending the hearing of the petition, the respondents are stayed from enforcing the order of the State Lottery Control Commission dated December 5, 1961 insofar as it may affect presently outstanding licenses of the petitioners for games scheduled for future dates.