31 N.Y.2d 330 (1972)
903 Park Avenue Corp., Appellant,
v.
City Rent Agency, Respondent.
Court of Appeals of the State of New York.
Argued June 7, 1972.
Reargued September 25, 1972.
Decided November 3, 1972.
Robert S. Fougner for appellant.
J. Lee Rankin, Corporation Counsel (Edmund B. Hennefeld and Stanley Buchsbaum of counsel), for respondent.
Norman Redlich, Corporation Counsel (Edmund B. Hennefeld and Stanley Buchsbaum of counsel), for respondent.
Judges BURKE, BERGAN and GIBSON concur with Chief Judge FULD; Judge BREITEL dissents and votes to reverse on the merits in a separate opinion in which Judges SCILEPPI and JASEN concur.
*332 Chief Judge FULD.
Effective June 1, 1971, the State of New York enacted chapter 372 of the Laws of 1971. After sanctioning continued rent control by cities having a population of *333 a million or more, chapter 372 went on to prohibit the enactment of any local law controlling rents which contains provisions "more stringent or restrictive" than provisions "presently in effect."[1] The City of New York thereafter adopted Local Law No. 7 of 1972 (Administrative Code of City of New York, § Y51-5.0, subd. n) which, inter alia, extended exemptions from rent increases previously granted (by Local Law No. 31 of 1970) to eligible senior citizens for a further period of six months, that is, from January 1 to June 30, 1972.
The plaintiff, a landlord, thereupon brought this action to declare Local Law No. 7 invalid and unconstitutional on the ground that it violated chapter 372. This claim was the sole assertion in the complaint and the only question argued at Special Term and in the Appellate Division. Unsuccessful in the courts below, the plaintiff filed an appeal to our court late last spring. While the appeal was pending, the city, on June 30, adopted Local Law No. 51 of 1972 pursuant to chapter 689 of the Laws of 1972. That chapter, which added section 467-b to the Real Property Tax Law, expressly authorized the city to grant exemptions to senior citizens from rent increases if, at the same time, the city fully compensated the landlords for the losses occasioned by such exemptions.
In our view, Local Law No. 51 which, as indicated, was passed in purported compliance with chapter 689, replaced and superseded the earlier local law, Local Law No. 7, and thereby rendered academic and moot the only question presented by the complaint and posed by this appeal, namely, whether the provisions of Local Law No. 7 are "more stringent or restrictive" than Local Law No. 31 of 1970. Since that issue is not one that is "likely to recur" (East Meadow Community Concerts Assn. v. Board of Educ., 18 N Y 2d 129, 135), there is no reason or justification for our continuing to entertain the appeal. (Cf., e.g., Matter of Plumbing Assn. v. Thruway Auth., 5 N Y 2d 420, 422, n. 1; Matter of Rosenbluth v. Finkelstein, 300 N.Y. 402, 404.) It follows, therefore, that the order appealed from should be reversed, without costs, and the case remitted to the Supreme Court, New York County, with directions to dismiss the complaint *334 upon the ground that the issue presented is moot. (See Town of Greenburgh v. Board of Supervisors of Westchester County, 23 N Y 2d 732; Wilmerding v. O'Dwyer, 297 N.Y. 664.)
The question which we are now asked to decide  and, as already stated, it was neither presented by the complaint nor argued in, or considered by, the courts below  concerns the constitutionality of Local Law No. 51, not the validity of Local Law No. 7. However, the lengthy delay which has attended the city's passage of amendments to Local Law No. 51  in an effort to gain compliance with the State's enabling act (L. 1972, ch. 689)  prompts us to remark the deleterious side effects which rent control, as administered by the city, has had on the maintenance of rental housing accommodations, and particularly on housing occupied by many of the elderly tenants affected by the exemption provisions involved in this case.[2] Piecemeal legislation of the sort reflected in this litigation, engendering as it does uncertainty and confusion, tends to exacerbate the situation.
BREITEL, J. (dissenting).
I would not dismiss the appeal or action as moot. The issue is a continuing one, of great public concern, crucial to the tenants involved, and of substantial concern to affected landlords. Moreover, nothing that has happened since last June has made the issue moot; indeed the intervening events have given the issue greater significance. Apart from this court's considered determination last June to entertain the controversy despite the shifting legislation upon which it turned, to avoid now the issue for mootness is contrary to this court's practice to determine issues of continuing public interest regardless of technical mootness (see, e.g., Matter of Gold v. Lomenzo, 29 N Y 2d 468, 475-476; Matter of Bell v. Waterfront Comm., 20 N Y 2d 54, 61; East Meadow Community Concerts Assn. v. Board of Educ., 18 N Y 2d 129, 135; Matter of Plumbing Assn. v. Thruway Auth., 5 N Y 2d 420, 422, n. 1; Matter of Adirondack League Club v. Black Riv. Regulating Dist., 301 N.Y. 219, 222-223; *335 Cohen and Karger, Powers of the New York Court of Appeals, pp. 420-421; and see, especially, Matter of Concord Realty Co. v. City of New York, 30 N Y 2d 308, directly concerning rent controls in the City of New York, in which earlier language of this court was quoted that an appeal should not be dismissed as academic "when the underlying questions are of general interest, substantial public importance and likely to arise with frequency" [30 N Y 2d, at pp. 312-313]). The vacillation by the City of New York in meeting the substantive issue legislatively and fiscally deserves no imitation. As for the requirement that the issue be likely to recur, the requirement is exceeded in this instance. Here the issue continues in unbroken sequence  the affected landlords continue to subsidize the rent exemptions  while their litigation would be mooted because the city juggles successive local laws, each more or less invalid. This is a unique and stronger factor than that in the cases in which the court has refused to declare a controversy moot.
On the merits, I assume, but with newly-emphasized doubts, that this court was correct in sustaining the city's initial legislation abating maximum rents otherwise applicable to housing accommodations rented to certain elderly tenants at the expense of their landlords for the period of a temporary emergency (Parrino v. Lindsay, 29 N Y 2d 30, 34, n. 2). However that may be, the State Legislature had previously barred the city from enacting rent controls "more stringent or restrictive" than provisions "presently in effect" (L. 1971, ch. 372). It is beyond serious dispute at this stage of the litigation that Local Law No. 7 of 1972, which extended the earlier exemptions provided by Local Law No. 31 of 1970 is void because more stringent and restrictive within the meaning of the State statute. Indeed, the State Legislature endeavored to come to the rescue of the city, and its elderly tenants of restricted income, by enacting chapter 689 of the Laws of 1972. The 1972 statute permitted the city to continue its complicated and indirect subsidy to elderly tenants of restricted income, but only if affected landlords would receive full reimbursement by way of tax abatements. Instead, the city, by a series of amendments to a proposed local bill, designed to meet the requirements of the State *336 statute, has still fallen short of shifting the burden of the subsidy from the landlords to the city. In consequence, even if that bill, now pending before the Mayor, were to take effect, it would still be void. It would still place, albeit to a lesser degree, the burden of the subsidy on an invidiously selected class, the landlords of elderly tenants of restricted income. In the face of this development the resort to dismissal for mootness continues the very condition this litigation attacked. The court, however, gives the city another victory, with mordant criticism it is true.
Consequently, I would retain jurisdiction of the controversy, reverse the order of the Appellate Division, declare relevant local laws invalid, and remit the case to the Supreme Court for further proceedings. In order not to wreak a new wrong on the elderly tenants and to provide time for the city, and perhaps the State Legislature, to take appropriate corrective action, I would stay the execution of the judgment to be rendered for 90 days.
Accordingly, I dissent and vote to reverse the order of the Appellate Division.
Order reversed, etc.
NOTES
[1] The law then "in effect" was New York City's Local Law No. 31 of 1970 which, we note, was upheld as constitutional in Parrino v. Lindsay (29 N Y 2d 30).
[2] This has been extensively and effectively demonstrated by Professor George Sternlieb in his 1970 report, entitled "The Urban Housing Dilemma  The Dynamics of New York City's Rent Controlled Housing," which the city commissioned him to prepare. As he repeatedly pointed out in the course of his report (e.g., pp. 50, 404, 513), "expectation" in the field of rental receipts is essential for the proper maintenance of such housing.